### LITTLE v. HOLLEY–BROOKS HARDWARE CO. et al.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1904.)

No. 1,329.

1. BANKRUPTCY—STATUTES—CONSTRUCTION.

Bankr. Act July 1, 1898, c. 541, § 3b, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], authorizing the filing of an involuntary bankruptcy petition within four months after the commission of an act of bankruptcy, and declaring that such time shall not expire until four months after the registering of the transfer, when the act consists of a transfer with intent to defraud creditors, or to give a preference if by law the transfer may be recorded, otherwise from the date the beneficiary takes notorious, exclusive, and continuous possession or creditors receive actual notice, has no relation to the proving of debts against the bankrupt's estate, or to the surrender of preferences, but only fixes a limitation for the filing of an involuntary petition.

2. SAME—VOIDABLE PREFERENCES.

Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], declares that conveyances, etc., by a person adjudged a bankrupt, within four months prior to the filing of the petition, with intent on his part to defraud his creditors, shall be void as against such creditors, etc. Held that such section was not applicable to a preferential transfer by a bankrupt, which was neither made within four months prior to the filing of the petition nor with intent to defraud his creditors.

3. SAME—PREFERENCES REQUIRED TO BE SURRENDERED—TIME.

Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended Act Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416], declares that a person shall be deemed to have given a preference which section 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], as amended 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 415], required to be surrendered in order to entitle the preferred creditor to prove his claim, if, being insolvent, the bankrupt has, within four months before the filing of a bankruptcy petition against him, or after the filing and before adjudication, transferred any of his property, which transfer will enable the transferee to obtain a greater percentage of his debt than any other creditor of the same class, and that the period of four months shall not expire until four months after the date of registration of the transfer, if registration is required. Section 3b, providing for the filing of an involuntary bankruptcy petition for acts of bankruptcy committed within four months, declares that the time shall not begin to run until

the transfer is recorded, if record is authorized, and, if not, until the transferee takes exclusive possession of the property, or the creditors have actual notice thereof. *Held,* that section 3b was not intended to be read in conjunction with sections 60a, 60b, and hence the four-months period of limitation as against a preferential transfer which was neither fraudulent nor required to be registered began to run from the date of the transfer, and not from the date the transferee took possession or the bankrupt's creditors acquired notice.

Appeal from the District Court of the United States for the Eastern District of Texas.

J. L. Young, for appellant.
A. P. Park and W. S. Moore, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. A petition in bankruptcy was filed by appellees against Chas. Pratt on April 3, 1903, and he was duly adjudged a bankrupt on his written admission of his inability to pay his debts and his willingness to be adjudged a bankrupt. The claim of the Delta National Bank against the bankrupt, which is involved in this suit, was evidenced by two promissory notes for $1,000 each, signed by H. S. Little, the appellant, as accommodation surety. Little paid the notes, and the bank assigned them to him. Little proved the claim against the bankrupt's estate, and sought to have it allowed. The appellees contested and objected to the allowance of the claim, alleging:

"That, the said Chas. Pratt being insolvent within four months next preceding the filing of the petition in bankruptcy against him, and with the intent and purpose of further preferring the said Delta County National Bank over his other creditors (of which intent and purpose the said bank or its agent acting in its behalf had notice, or had reasonable cause to believe that a preference was thereby intended), made a pretended sale or transfer of his storehouse, in which he was doing business, and situate in the village of Pacio, Delta county, Tex., to said bank, or to James A. Smith, its cashier, with the agreement or understanding, substantially, that the value of said storehouse should be credited on said bank's debt. Contestants allege that said storehouse was of the reasonable value of $1,500, and that, if said pretended sale and transfer be not set aside and said storehouse surrendered to the estate of said bankrupt, it will have the effect to enable the said Delta County National Bank to receive a greater percentage on its debt than any of the other creditors of the same class of said bankrupt. Contestants aver that they cannot allege the exact date of said transfer because the pretended instrument of conveyance has never been placed upon record."

The record shows that the bankrupt owned a storehouse, which was personal property, he having the right to remove it from the lot on which it stood. This house he sold to the Delta National Bank, as shown by a writing as follows:

"Cooper, Texas, Oct. 13th 1902.
"Know all men by these presents, that I have this day sold to James A. Smith my storehouse at Pacio, Texas, the same being situated on John Miller's land, and will defend his title to same, for and in consideration of fifteen hundred dollars, cash in hand paid and the receipt of which is hereby acknowledged.                    [Signed]         Chas. Pratt."

This sale was made more than four months before the petition in bankruptcy was filed against Pratt. At the time of the sale the bank credited Pratt with $1,500, the purchase price of the house, on an overdraft of $1,873.12 due to the bank by Pratt. There was no law which required or permitted the written evidence of this sale to be recorded. Chas. Pratt continued in the actual possession of the storehouse. It was not at any time before his adjudication in bankruptcy in the notorious, exclusive, or continuous possession of the bank. It was held by the referee "that the preference should be set aside on the ground that it was not such a transfer that should be recorded, and that under the bankrupt act it would not become effective until the creditor sought to be preferred took notorious, exclusive, or continuous possession of the property," as required by Bankr. Act July 1, 1898, c. 541, § 36, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]. This ruling was approved by the District Court, and the decree is assigned as error.

The main question involved in this case relates to the effect of sections 3a and 3b of the bankruptcy act of 1898. The relevant parts of these subdivisions are as follows:

"Sec. 3. Acts of bankruptcy. (a) Acts of bankruptcy by a person shall consist of his having * * * (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors. * * *

"(b) A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment."

The first part of this section relates to acts of bankruptcy. The several acts of a debtor which will subject him to involuntary bankruptcy are stated, the second being his having "transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." The section, in subdivision "b," then fixes four months after the commission of the act of bankruptcy in which the creditors must file their petition against the debtor. Generally, as to other acts of bankruptcy, the four-months limitation begins to run at the time of the commission of the act of bankruptcy, because the petition in involuntary bankruptcy must be filed "within four months after the commission of such act." As to the second act of bankruptcy—that is, the preferential transfer of property to a creditor, just quoted above—this section fixes the date from which the four months will begin to run in cases involving written transfers required or permitted to be recorded, and when there is no provision for such record the date of the beginning of the running of the four months is fixed at the time when the beneficiary of the transfer takes notorious, exclusive, or continuous possession of

the property, unless the petitioning creditors have received actual notice of the transfer. If they had actual notice, the four months would begin to run just as it would on the change of possession described. This subdivision does not relate to the proving of debts against the bankrupt's estate nor to the surrender of preferences which creditors have received. It relates to the grounds of involuntary bankruptcy and the limitation of the filing of the petition. When the alleged bankrupt defends against the petition by averring that the acts of bankruptcy charged against him were not committed within the four months, this subdivision (3b), without necessary reference to others, fixes the time when the four months begins to run. Time exceeding four months from the date of the execution of the transfer will not avail him as a defense if the transfer was one required or permitted to be recorded; and, if the registry laws of the state are not applicable to the transfer, the four-months limitation will begin only on implied notice to the creditors arising from change of possession, or actual notice to them of the transfer. The strictness of the statute is against the bankrupt. The language of the statute limits the use by the bankrupt of the four-months limitation as a defense to the proceeding against him. The Congress in this section is not dealing with the distribution of the bankrupt's assets, nor with the surrender of preferences. The language all relates to the contest preceding the adjudication.

Section 57g, as amended February 5, 1903 (32 Stat. 799, c. 487 [U. S. Comp. St. Supp. 1903, p. 415]), relates to creditors who have received voidable preferences. It is in these words:

"(g) The claims of creditors who have received preferences, voidable under section sixty, subdivision 'b,' or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section sixty-seven, subdivision 'e,' have been made or given, shall not be allowed unless such creditors shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

The general question to be considered and decided is whether or not the statute just quoted requires the appellant to surrender the property transferred to him by the bankrupt before his claim against the bankrupt's estate shall be allowed. The preferences that are required to be surrendered are made certain by reference to other parts of the statute. We shall first see if the transfer to appellant was voidable under section 67, subd. "e," referred to in the statute last copied. It is as follows (section 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]):

"(e) That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void, as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration. * * *"

This statute is not applicable to the transfer in question here, unless it appear that it was made within four months prior to the filing of the petition, and unless it was made with the intent and purpose on the

part of the bankrupt to "hinder, delay, or defraud his creditors." We do not understand the findings of the referee to be to the effect that the transfer was fraudulent within the meaning of 67e, and the transfer for that reason would not be a voidable preference under this statute.

The decision of the referee and the court below, as we understand it, was controlled by the other statute referred to in 57g, to wit, 60b, which must be construed in connection with 60a, the latter describing and designating voidable preferences. Section 60, subds. "a," "b" (as amended February 5, 1903, 32 Stat. 799, c. 487 [U. S. Comp. St. Supp. 1903, p. 416]), are as follows:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable anyone of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required.

"(b) If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. * * *"

These subdivisions are found in a chapter dealing primarily with creditors, and in a section treating of creditors who have been preferred, and the limit in which the preference is made illegal. If found to be within this subdivision (60b), the preference is expressly required to be surrendered as a condition precedent to the allowance of the claim by the very terms of 57g. These three subdivisions were made parts of the act by the amendment of February, 1903, and the latter points to the former (60a and 60b) for a description of the preference which must be surrendered to secure the allowance of the claim. So far as applicable to this case, such preference required to be surrendered is a transfer of the property made "within four months before the filing of the petition." The referee has found that the transfer in question here was executed more than four months before the filing of the petition. If the four months, therefore, begins to run at the date of the execution of the transfer, the transfer is not a voidable preference within the statute. So the case is made to turn on the inquiry, when did the four-months limitation begin to run? Section 60a concludes with these words:

"Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

The transfer in question, as found by the referee, is not one "required by law to be recorded," so no date of record can be referred to to postpone the beginning of the four months. This is conclusive against making the preference voidable if we are confined to this subdivision. This statute, to which alone on this point 57g refers, contains no language about the change of possession of property such as

is found in section 3b.   The contention is that we should, by construc-
tion, take from section 3b and add to section 60a the provision in the
former that, when the law does not require or permit the transfer to be
recorded, the four months shall begin to run "from the date when the
beneficiary takes notorious, exclusive, or continuous possession of the
property, unless the petitioning creditors have received actual notice
of such transfer or assignment."   The referee, whose decision has
been affirmed by the court below, has made this language taken from
3b applicable to the case, and has held that the claim of the appellant
cannot be allowed unless he surrenders the preference, because, as the
referee found, the transferee did not take notorious, exclusive, or con-
tinuous possession of the property more than four months before the
petition in bankruptcy was filed.   As these statutes are written, the
clause we have just quoted concerning possession is made to apply
only to controversies concerning acts of bankruptcy, but not to a con-
troversy as to the allowance of a claim and the surrender of a pref-
erence.   If Congress had intended that the same rule as to the date
when the four-months limitation should begin to run was to apply
to both controversies, it seems probable that the same or similar lan-
guage would have been used in each of the subdivisions.   It has been
suggested that, the provision as to notorious possession being in 3b, it
was unnecessary to repeat it in 60a, because it was the intention that it
should be read there by construction.   That such could not have been
the intention becomes evident from a careful reading.   The two sub-
divisions each fixes four months as the limitation.   Then each subdi-
vision proceeds to fix the time when the four months shall begin to
run where the act or the preference consists in the transfer of property.
The former (3b) fixes the date of the recording or registering of the
transfer, if record is required or permitted, and, if record is not re-
quired or permitted, the four months is to begin to run when notorious
possession of the property is taken by the beneficiary.   The latter (60a)
provides that, "where the preference consists in a transfer, such period
of four months shall not expire until four months after the date of the
recording or registering of the transfer, if by law such recording or
registering is required."   The latter section does repeat the former in
fixing the date for the beginning of the four-months limitation as to
transfers which are "required" to be recorded.   Congress did not con-
clude, therefore, that it was unnecessary to repeat this provision in the
latter section, but did repeat it in part, omitting, however, to make
the same repetition when the law merely "permitted" registration, and
making no reference whatever to possession as affecting the starting
of the four-months statute against the creditor.   The result is, if we
are to be governed by the language used, a difference in the rule as to
the beginning of the running of the four months in the two kinds of
controversies.   The rule is harsher against the bankrupt than against
the creditor.   When the bankrupt wishes to avail himself of the four-
months limitation, and the alleged act of bankruptcy is a transfer, four
months must have elapsed from the record of the transfer, if record is
required or permitted; if not, four months from the notorious pos-
session of the beneficiary.   But when the creditor seeks to avoid by the
four-months limitation the surrender of an alleged preference, it is

sufficient if it appear that the transfer was made four months before the filing of the petition in bankruptcy, and it is only when the transfer is required by law to be recorded that the period will begin to run at the date of the recording. It is not unreasonable that Congress should have intended to be more liberal in the application of the limit when it applies to the creditor than when it applies to the bankrupt; for in its application to the creditor the provision avoiding preferences is a statutory infringement on the rule of general law which rewards the diligence of creditors.

It is true, as a general proposition, that where relief is sought in equity on the ground of fraud, where ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute of limitations will not bar relief, provided suit is brought within proper time after the discovery of the fraud. Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636. But this principle has no application here. The acts described in section 60a are not such as were condemned as fraudulent at common law nor by the statutes of the states, nor are they immoral or dishonest. To secure an equal division of the bankrupt's property among his creditors, the statute prescribes a conventional rule to determine the limit of preferences. The limit prescribed is four months before the filing of the petition. Any transfer to a creditor made within that time is voidable if it enables the creditor to obtain a greater percentage of his debt than other creditors of the same class. This is so not because of bad faith, but simply because the statute says they are voidable. If the transfer in question was in violation of other provisions of the bankruptcy act, or contrary to state laws against fraudulent transfers or conveyances, the trustee has his remedy to recover or condemn the property in any court having jurisdiction. But no question is before us, in this case, involving such right.

The decree of the District Court is reversed, and the case remanded for further proceedings in conformity with the opinion of this court.