## MANNING v. EVANS.

### (District Court, D. New Jersey. August 8, 1907.)

### No. 116.

**1. BANKRUPTCY—VOIDABLE PREFERENCE—DATE OF FILING PETITION.**

Where a petition in involuntary bankruptcy was insufficient on its face to authorize the court to make an adjudication, because it showed less than the required number of legally qualified petitioners, but other creditors afterward joined therein, the four months' period within which transfers of property may be avoided as preferential, under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], or as fraudulent, under section 67e as amended by Act Feb. 5, 1902, c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1905, p. 690], runs back from the time when such joinder made the petition sufficient, which for such purpose must be considered as the date of filing.

**2. SAME.**

Under the law of New Jersey, it is not unlawful for an insolvent debtor to prefer a creditor by a transfer of property, if made in good faith and for an adequate consideration, and the trustee of a bankrupt cannot set aside such a transfer made by him under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 566 [U. S. Comp. St. 1901, p. 345], which gives the trustee the right to avoid any transfer which might have been avoided by creditors.

In Equity. On final hearing.

John S. Applegate & Son, for complainant.

Wesley B. Stout and Charles Harvey, for defendant.

LANNING, District Judge. The complainant is trustee of the estate of William F. Patterson, bankrupt. By his bill of complaint he seeks a decree setting aside certain conveyances of lands by Patterson to the defendant, George W. Evans. The pleadings and proofs establish these facts:

On December 28, 1904, Patterson was indebted to the defendant in the sum of $1,130.08 for cash loaned, and the sum of $2,600 on promissory notes, making in all the sum of $3,730.08. On these sums interest had accrued to the amount of $347. Patterson was also indebted to the defendant in the sum of $800, secured by mortgage on a parcel of real estate in Monmouth county, N. J., on which interest had accrued to the amount of $140. For some months the defendant had been endeavoring, without success, to get a settlement by Patterson. On the

date above mentioned, Patterson proposed to convey to the defendant the parcel of land covered by the mortgage of $800 at a valuation of $1,800, which, after deducting the mortgage debt of $800, the interest of $140 accrued thereon, and taxes amounting to $34, left the valuation of the equity at $826. On December 30, 1904, Patterson proposed to convey to the defendant four other parcels of incumbered real estate, the equities in which were respectively valued at the sums of $21.05, $1,256, $1,065, and $100. The aggregate valuations of the equities in the five parcels was therefore $3,268.05, or $462.03 less than Patterson's principal indebtedness to the defendant on the promissory notes and for cash loaned. There is no dispute concerning the amount of Patterson's indebtedness, and none concerning the fairness of the valuations of the equities in the real estate. The defendant accepted from Patterson deeds of conveyance for the five parcels and had them duly recorded on December 29 and 31, 1904. At the time of these conveyances, Patterson was also indebted to the Second National Bank of Red Bank, N. J., on eight promissory notes.

A petition to have Patterson adjudged an involuntary bankrupt was filed against him on March 31, 1905, by the Second National Bank of Red Bank, George K. Hopping, and David C. Bennett. The claims of these petitioners were based by their petition solely upon the eight promissory notes above referred to. The petition showed that Hopping was liable as indorser on five, and that Bennett was so liable on one, of the eight notes, and that the Second National Bank had recovered judgments on all the notes not only against Patterson as maker, but against all the indorsers, including Hopping and Bennett. There was no averment that Hopping or Bennett had paid to the Second National Bank any part of the judgments thus recovered against them, or that they had in any way whatever become creditors of Patterson, or that the bankrupt's creditors were less than 12 in number. On April 15, 1905, Patterson filed a general demurrer to the petition, alleging it to be insufficient. On June 9th, the demurrer was withdrawn, and a plea interposed alleging that Patterson's creditors were more than 12 in number, and that the petition had in fact been filed by but one creditor. On June 27th, the petitioners filed a replication to the plea. On July 3d, before any hearing upon the plea, two other creditors entered appearance and joined in the original petition. On July 10th Patterson consented that he be adjudicated a bankrupt, and adjudication was that day made. On August 11th, the bankrupt filed a schedule of his assets and liabilities showing that his creditors were more than 12 in number, and on August 15th the complainant was appointed trustee.

This statement shows that, as the pleadings stood up to July 3, 1905, this court was without power to adjudge Patterson a bankrupt. Hopping and Bennett were not shown by the petition filed on March 31st to be creditors of Patterson. They were simply contingently liable upon notes which they had indorsed for Patterson. The petition therefore had been filed by but one creditor. More than three months were allowed to intervene before any other creditor availed himself of the privilege contained in section 59f of the bankruptcy act to enter his appearance and join in the original petition. Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Until at least three

creditors having provable claims amounting in the aggregate in excess of the value of securities held by them to $500 or more had joined in a petition to have Patterson adjudged a bankrupt, the court was without authority so to adjudge him. The contention of the defendant in the present case therefore is that the bankruptcy proceedings must be considered as having been commenced on July 3, 1905, more than four months after the date of recording the conveyances to him, and too late to effect the preferences he thus received.

In the Romanow Case (D. C.) 92 Fed. 510, Judge Lowell said:

"The respondents further object that Breitstein's appearance was entered more than four months after the act of bankruptcy complained of, but this seems immaterial. Section 3b provides that the petition may be filed within four months of the act of bankruptcy. The petition was filed January 29th, and that remains the date of its filing, though some petitioners have joined in it subsequently thereto. For instance, the date of bankruptcy is defined by section 1, subd. 10, to be the date when the petition was filed. If an adjudication is made in this case, the date of bankruptcy will be January 29th, though the adjudication be made upon the petition of one or more creditors who joined therein in the month of February."

In the Stein Case, 105 Fed. 749, 45 C. C. A. 29, Judge Wallace, speaking for the Circuit Court of Appeals of the Second Circuit, after referring to section 59f of the bankruptcy act, which authorizes creditors other than original petitioners "at any time" to enter their appearance and join in the petition, said:

"It is urged that to permit other creditors to procure an adjudication who have not sought to do so until after four months have elapsed since the act of bankruptcy would enable them to overhaul conveyances and sales as fraudulent or preferential which could not be done otherwise, and might work injustice to those whose titles had by lapse of time become safe. Nothing in the bankrupt act indicates a solicitude for the protection of fraudulent vendees, and, if creditors whose preferences may be disturbed have any equities to urge against an adjudication, they are authorized by section 59 to intervene and present them. And, even if imaginable cases of hardship may arise, the plain language of the act, authorizing creditors 'at any time' to join in the original petition, cannot be disregarded."

In each of the above cases, however, the petition appeared, on its face, to be free from defects.

In the Bedingfield Case (D. C.) 96 Fed. 190, Judge Newman said:

"It would be necessary in every case, of course, that a petition in involuntary bankruptcy should, on the face of it, show that creditors participated to the amount of $500, before a petition could be filed, or a rule obtained; and these, of course, would have to be participating in good faith. Then, if afterwards, and before adjudication, it should appear that for some reason one or more of the petitioning creditors did not have debts, or their debts were not provable, and other creditors came in sufficient to make the amount necessary, they could be allowed, and the proceedings stand. The court would never entertain a mere sham petition prepared originally with a view to doing this, but it would be only where a petition was brought in good faith, and some such contingency as has been referred to occurred."

In the Mackey Case (D. C.) 110 Fed. 355, the petition was correct in form. It was shown, however, that the petitioning creditors did not have provable claims amounting to $500, although in their petition they had averred that they had. Other creditors were thereupon allowed

to join in the original petition after the expiration of four months from the date of the act of bankruptcy.

In the Haff Case, 136 Fed. 78, 68 C. C. A. 646, it appears that the original petition against Haff was filed by a single creditor, who averred that the number of creditors was less than 12. Haff filed an answer alleging that they were more than 12 in number. Thereafter two other creditors intervened in the proceedings under the original petition. Later still, Edward Ridgely filed a petition which the Circuit Court of Appeals for the Second Circuit held to be an original petition, but defective because it did not allege that the creditors were less than 12 in number. It was allowed to stand, however, for the reason that that defense was not properly presented on the hearing by the bankrupt.

In the present case, the petition in bankruptcy was defective on its face. There was no averment that the creditors were less than 12 in number, and they were in fact more than 12. While there were three petitioners, the facts averred showed that only one of them was a creditor. In law, therefore, there was but one petitioner. If other creditors desired to put themselves in a position where they might, through a trustee, obtain a decree vacating the preferences set forth in the petition as acts of bankruptcy, they should have entered their appearances and joined in the petition within four months after the preferences were given. The filing of a petition in bankruptcy is notice to all the world. If, on its face, it appears to be in proper form, creditors who do not join in it are entitled to rely upon it as a good petition. In every such case, if it subsequently appear that some of the petitioners are not creditors, or if some other defect be made to appear, a reasonable construction of the bankruptcy act permits such defect to be cured by allowing other creditors to appear and join in the petition even after the expiration of the four months' period. But to extend that rule to a case in which the petition shows on its face that the requisite number of creditors have not joined in it—a defect which every creditor is bound to observe—is equivalent to adjudging a petition valid in which the acts of bankruptcy charged were committed more than four months before the filing of the petition.

I think that a proper construction of the bankruptcy act requires me to hold, in this case, that the petition in bankruptcy was not filed until July 3, 1905. As the conveyances to the defendant, Evans, were made more than five months previous to this date, it follows that they cannot be set aside under the provisions of section 67e of the bankruptcy act. See Little v. Holley-Brooks Hardware Company, 133 Fed. 874, 67 C. C. A. 46.

Nor can they be set aside under the provisions of section 60b, which is as follows:

"If a bankrupt shall have given a preference and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

A "preference," within the meaning of this section, is such an one as is described in section 60a, where it is said:

"A person shall be deemed to have given a preference if being insolvent, he has, within four months before the filing of the petition * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

In 1903 the clause respecting the four months' limitation was transferred to section 60a from section 60b. The effect of this transfer was to make the four months' limitation an element of the preference referred to in both of the sections. Section 60b therefore does not authorize a recovery by a trustee where the preference was made more than four months before the filing of the petition.

The remaining question is whether the complainant is entitled to redress under the provisions of section 70e, which is as follows:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered, or its value collected, from whoever may have received it except the bona fide holder for value. For the purpose of such recovery any court of bankruptcy hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

It will be observed that in this section there is no four months' limitation as in the other sections above referred to. Its effect is to subrogate the trustee to the rights of creditors. Its distinguishing feature is that it authorizes a trustee in bankruptcy to invoke the relief furnished by state laws to creditors for annulling transfers of property by their debtors. See In re William H. Gray (Sup.) 3 Am. Bankr. Rep. 647, 62 N. Y. Supp. 618; Skillen v. Endelman (Sup.) 11 Am. Bankr. Rep. 766, 79 N. Y. Supp. 413; Collier on Bankruptcy (6th Ed.) 613; Loveland on Bankruptcy (3d Ed.) § 158; Bush v. Export Storage Company (C. C.) 136 Fed. 918. The question therefore is: Are the facts such that a court of the state of New Jersey would adjudge the conveyances of December 28 and 30, 1904, invalid as against creditors?

As already stated, Patterson's indebtedness to the defendant was in excess of the fair value of the equities in the lands conveyed to the defendant. The considerations agreed on were credited against that indebtedness. The conveyances were made for valuable considerations, and also, I am satisfied, in good faith. It is a well-settled principle of law in New Jersey that an insolvent debtor may prefer any of his creditors, either by giving a mortgage upon his property to secure an antecedent indebtedness, or by conveying property to his creditor in satisfaction of such indebtedness, provided it be done in good faith and for an adequate consideration. See Garr v. Hill, 9 N. J. Eq. 210; Livermore v. McNair, 34 N. J. Eq. 478; Low v. Wortman, 44 N. J. Eq. 193, 7 Atl. 654, 14 Atl. 586.

I am unable to discover any theory upon which I can sustain the bill of complaint, and there must be a decree dismissing it, with costs.