[Civil No. 944.   Filed March 30, 1906.]

[85 Pac. 653.]

## In the Matter of THE BLACK DIAMOND COPPER MINING COMPANY, a Corporation, in Bankruptcy. SOTO BROS. & RENAUD, Appellants.

1. BANKRUPTCY — COMPROMISE WITH PETITIONING CREDITORS — RIGHTS OF CREDITORS SUBSEQUENTLY APPEARING.—An arrangement made by a debtor and creditors in a petition in involuntary bankruptcy whereby claims of the creditors are compromised, sometimes termed an "informal composition," is subject to the rights of any creditor who may appear and present his claim.

2. SAME—INVOLUNTARY — PETITIONING CREDITORS — WHO MAY JOIN— BANKRUPTCY ACT, JULY 1, 1898, C. 541, SEC. 59 (f), 30 STATS. 562 (U. S. COMP STATS. 1901, P. 3445), CONSTRUED.—Section 59 (f), *supra*, expressly provides that creditors other than the original petitioners may join in the original petition in involuntary bankruptcy.

3. SAME—ADJUDICATION—DUTY OF COURT — DISMISSAL — BANKRUPTCY ACT, JULY 1, 1898, SEC. 18 (b), AS AMENDED, ACT FEB. 5, 1903, C. 487, 32 STATS. 798 [U. S. COMP. STATS. SUPP. 1905, P. 685], SEC 18 (e), C. 541, 30 STATS 551 [U. S. COMP. STATS. 1901, P. 3429], SEC. 18 (f) CONSTRUED.—Under section 18 (b), *supra*, as amended, providing that the bankrupt may appear to plead to the petition in involuntary bankruptcy within five days after the return day; section 18 (e), *supra*, providing that if, on the last day within which pleadings may be filed, none are filed, the judge shall on the next day make the adjudication or dismiss the proceeding; and section 18 (f), *supra*, providing that if the judge be absent on the next day after the last day on which pleadings may be filed, and none have been filed, the clerk shall refer the case to a referee,—where a petition in involuntary bankruptcy set forth acts of bankruptcy, and no pleadings were filed by the bankrupt within the time fixed by law, nor within further time granted by the court, it was the duty of the court to adjudicate the debtor a bankrupt, and a dismissal as against the objection of a creditor seeking to join in the petition is error.

4. SAME — DISMISSAL OF PROCEEDINGS — WHEN NOT PERMISSIBLE. — A creditor who has joined in a petition in involuntary bankruptcy proceedings may not effect a settlement with the bankrupt and then withdraw, and thus destroy the jurisdiction of the court.

5. SAME—DISMISSAL—NOTICE—NECESSITY—BANKRUPTCY ACT, JULY 1, 1898, C. 541, SECS. 58 (a), 59 (g), 30 STATS. 561, 562 (U. S. COMP. STATS. 1901, PP. 3443, 3445), CONSTRUED.—An order dismissing a petition in involuntary bankruptcy without complying with the provisions of sections 58 (a) and 59 (g), *supra*, requiring that at least

ten days' notice shall be given all creditors before an involuntary petition shall be dismissed, by the petitioners, or for want of prosecution, or by consent of parties, is invalid.

**6.** SAME — ATTORNEY'S FEES — WHEN ALLOWABLE — BANKRUPTCY ACT, JULY 1, 1898, c. 541, SEC. 64 (b), 30 STATS. 563 (U. S. COMP. STATS. 1901, P. 3447), CONSTRUED.—Under section 64 (b), *supra*, fixing the priority of debts, providing for the payment of the cost of administration, and including therein one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed by the petitioners in involuntary cases, an allowance of an attorney's fee for the attorney for creditors in a petition in involuntary bankruptcy, where no adjudication of bankruptcy is made, is unauthorized.

[Motion for Rehearing, April 9, 1906.   Appeal U. S. C. C., May 12, 1906.]

APPEAL from a judgment of the District Court of the Second Judicial District.   Fletcher M. Doan, Judge.   Reversed.

Proceedings in involuntary bankruptcy of The Black Diamond Copper Mining Company.   From an order refusing to adjudicate the company a bankrupt, and from an order making an allowance of attorney's fees, Soto Bros. & Renaud, petitioning creditors, appeal.

The facts are stated in the opinion.

James Reilly, for Appellants.

The court erred in permitting the bankrupt to introduce the testimony of Nat Hawke, as to an alleged compromise of the claim of Soto Bros. & Renaud, because there was no issue before the court, no pleadings, and no notice that such questions would be tried.   Bankruptcy Act, sec. 18, (e) and (f).   The court erred in making the orders of July 28th and July 31, 1905, dismissing the proceedings.   When the petitioning creditors withdrew from the case, they did not and could not thereby dismiss their petition, which remained of force for all other creditors, and petitioning creditors were thereby bound under their bond for all costs incurred up to that time, including their attorney's fee.   Bankruptcy Act, sec. 4 (e). And neither the petitioning creditors, not even the court, had authority to dismiss the petition until after notice to creditors. Bankruptcy Act, sec. 59 (g) ; *In re Plymouth Cordage Co.,*

135 Fed. 1,000, 68 C. C. A. 434. Sec. 58 of the Bankruptcy Act, subds. (a), (b), and (c), specifies what notices shall be given, and when and by whom. It was the duty of counsel for petitioning creditors to press the case until he secured an adjudication of bankruptcy and a reference of the case, when other creditors would be notified and could present their claims. See Bankruptcy Act, sec. 64 (b), subd. 3; *In re Habegger,* 139 Fed. 623, 71 C. C. A. 607; *Randolph* v. *Scruggs,* 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1,165; Fed. Cas. No. 1,214. This court has jurisdiction to consider this matter. *Ingram* v. *Wilson,* 125 Fed. 913, 60 C. C. A. 613.

CAMPBELL, J.—On November 25, 1904, the California Vigorit Powder Company, Harper & Reynolds Company, and F. W. Braun Company, filed a petition in bankruptcy against The Black Diamond Copper Mining Company, a corporation. Several acts of bankruptcy were alleged. Summons was duly issued and served, and December 10, 1904, fixed as the return day. On the return day counsel entered appearance for the company and secured from the court an order granting thirty days' extension of time in which to plead. No answer having been filed within this extended time, the court, on January 23, 1905, further extended the time to plead until March 1, 1905. No answer was filed within the extended time, nor has any answer ever been filed. It appears in the minute entries in the record that on April 3, 1905, counsel for the petitioners and for the bankrupt appeared before the court, and the court heard argument upon some matter, the nature of which is not disclosed, and continued the matter for the term. On May 9, 1905, it similarly appears that the testimony of two witnesses was taken. The record does not disclose the nature of the testimony taken. The matter was then continued to May 11th. No action was taken on May 11th, and on May 18th the minutes recite that the case was continued by consent for a further hearing on May 31, 1905. On June 1, 1905, the appellants, Soto Bros. & Renaud, copartners, filed a petition setting forth the same acts of bankruptcy contained in the original petition, that they are creditors, and prayed leave to join in the original petition, and that the respondent company be adjudged a bankrupt. On June 2, 1905, the copper company filed what is denominated a

"demurrer" to this request and petition, setting forth that the original petitioners have been settled with and their claims paid. It is further alleged that "the records of this court also show that the claim of petitioners for $2,150 and the claim of N. O. Bagge have been paid, and that they are not any longer creditors of the corporation." No answer is made to the allegations of the petition alleging the commission of acts of bankruptcy. So far as the record discloses, no ruling was made on the demurrer. On June 5, 1905, the appellants filed an amended petition to which no answer has been made by the copper company. On July 28, 1905, the court entered the following order: "It is by the court ordered that the counsel for the petitioning creditors, W. J. Kirkpatrick, be allowed a fee of two thousand dollars. It is further ordered, upon the payment by the defendant company herein of the counsel fee, that this proceeding be dismissed." On July 31, 1905, the court extended the order of July 28th to include the petition of appellants. Appellants have appealed from the order refusing to adjudicate the copper company a bankrupt and the allowance of the attorney's fee. The attorney's fee mentioned in the order as a condition precedent to dismissal is for the attorney who represented the original petitioners.

The question first presented is whether the court erred in refusing to adjudicate the copper company a bankrupt and in dismissing the petitions. We are not aided in this investigation by any brief on behalf of the appellee. It is alleged by appellant, and it also appears from certain papers accompanying the very imperfect record in this case, that instead of filing an answer to the original petition the copper company confined itself to compromising the claims of the creditors, and that the various extensions of time within which to plead were secured with that end in view; that among those with whom settlements were effected were the original petitioning creditors. The action which the appellee attempted is what is sometimes termed an "informal composition." Such compositions are subject to the rights of any creditor who may appear and present his claim. *In re Lockwood,* (D. C.) 104 Fed. 794.

It is first to be observed that by the plain provision of the Bankruptcy Act appellants had a right to join in the original petition. Section 59 (f) reads: "Creditors, other than

original petitioners, may at any time enter their appearance and join in the petition or file an answer and be heard in opposition to the prayer of the petition." Act July 1, 1898, c. 541, 30 Stats. 562, (U. S. Comp. Stats. 1901, p. 3445). What, then, was the duty of the court,—the original petition showing acts of bankruptcy and there being no answer denying them? Section 18 (b) of the Bankruptcy Act, as amended (act Feb. 5, 1903, c. 487, 32 Stats. 798, [U. S. Comp. Stats. Supp. 1905, p. 685]), provides that "the bankrupt or any creditor may appear to plead to the petition within five days after the return day, or within such further time as the court may allow." Section 18 (e) provides: "If on the last day within which pleadings may be filed none are filed by the bankrupt or any of his creditors, the judge shall, on the next day, if present, or as soon thereafter as practicable, make the adjudication or dismiss the petition." Act July 1, 1898, c. 541, 30 Stats. 551, (U. S. Comp. Stats. 1901, p. 3429). Section 18 (f) provides that, "if the judge be absent from the district on the next day after the last day on which pleadings may be filed, and none have been filed by the bankrupt or his creditors, the clerk shall forthwith refer the case to the referee." No pleadings were filed by the bankrupt within the time fixed by law, nor within the further time granted by the court. There is no question but that the original petition set forth acts of bankruptcy. It therefore became the duty of the court to adjudicate the Copper Company a bankrupt. *Bray* v. *Cobb*, (D. C.) 91 Fed. 102. See Brandenburg on Bankruptcy, sec. 489; Collier on Bankruptcy, 221.

The record does not disclose upon what point testimony was taken, but we cannot perceive how any testimony could be pertinent, as no issue whatever was raised by the pleadings. While no formal request to withdraw or to dismiss on behalf of the original petitioners is found in the record, it is apparent that such a request was made verbally to the court, and that the court was of the opinion that they had that right, and that, there being but one other creditor left in court and no allegation that the creditors were less than twelve in number, it was compelled to make the order of dismissal. We are of opinion that the trial court was mistaken in this view of the law. Under the authorities it is probably the duty of the court to dismiss a petition upon the

application of all of the petitioners, after notice given as required by law; but a creditor who has joined in a petition may not effect a settlement with a bankrupt and then withdraw, and thus destroy the jurisdiction of the court. As was said by Judge Newman in *In re Bedingfield*, (D. C.) 96 Fed. 190, "Where a creditor joins in a proceeding in involuntary bankruptcy and allows a petition to be filed and afterwards obtains a settlement in some way, it is too late to withdraw from the proceeding in the way attempted here. On the face of the papers this is a clear preference of one creditor." Judge Lowell, in *In re Cronin*, (D. C.) 98 Fed. 584, says: "This was an involuntary petition which the respondents moved to dismiss. Two of the three petitioning creditors assented to this motion, and I am satisfied that it would be for the best interest of the creditors that the petition should be dismissed and the respondent permitted to settle with his creditors by way of compromise, which he is prepared to do fairly and equally. The other petitioning creditor objected to the dismissal of the petition and desired to proceed to an adjudication. It was not shown that any of the parties were acting in bad faith. If a respondent has committed an act of bankruptcy and the statutory number of his creditors has duly petitioned for his adjudication as a bankrupt, this court must make the adjudication, even though it is satisfied that a compromise offered by the respondent would be for the best interest of the creditors. Bankruptcy is not a remedy, like an injunction or the appointment of a receiver, granted in the discretion of a court of equity. A distribution of a debtor's assets is to be made in bankruptcy, if he has committed an act of bankruptcy and the other statutory requisites have been complied with. Fraud, oppression, or even mistake, may in some cases be sufficient ground for the dismissal of a petition, but none of these grounds exists here. Lowell on Bankruptcy, p. 39; *King* v. *Henderson*, (1898) App. Cas. 720. Is the condition altered by the fact that the majority of the petitioners come to desire a dismissal of the petition, which dismissal is resisted by the minority? Will the assent of the majority of the petitioners enable the court to act for the interest of the creditors by dismissing the petition, or has the minority the right to insist upon an adjudication if an act of bankruptcy has been committed? I think that

in this case the right of the minority is absolute. After the petitioners have joined in a petition they cannot ordinarily withdraw against the wishes of their fellow petitioners." Furthermore, the mandatory provisions of the Bankruptcy Act, in sections 58 (a) and 59 (g) (Act July 1, 1898, c. 541, 30 Stats. 561, 562, [U. S. Comp. Stats. 1901, pp. 3443, 3445]), requiring that at least ten days' notice shall be given all creditors before an involuntary petition shall be dismissed, by the petitioners, or for want of prosecution, or by consent of the parties, were not complied with. The order dismissing the petition without the notice required by the statute is invalid and must be set aside. *In re Plymouth Cordage Co.,* 135 Fed. 1000, 68 C. C. A. 434.

Appellants also complained of the order made allowing a fee to the attorney for the petitioning creditors, the objection being that since they did not secure an adjudication there is no reason why the bankrupt's estate should be depleted at the expense of the creditors who do desire an adjudication. The authority of the court to allow an attorney's fee to the petitioning creditors is found in section 64 (b), which provides: "The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (3) The cost of administration, including . . . One reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases." Act July 1, 1898, c. 541, 30 Stats. 563, (U. S. Comp. Stats. 1901, p. 3447). We have found no case in which a fee was allowed an attorney for the petitioning creditors prior to adjudication. The provision of law for a fee to the attorney presupposes a prior adjudication, as it is included as a cost of administration of the bankrupt's estate. It seems too clear for argument that a court may not administer the estate until an adjudication of bankruptcy is made.

The orders complained of are set aside, and the case remanded to the court below, with directions to adjudicate the copper company a bankrupt, and to proceed with the administration of its estate.

KENT, C. J., SLOAN, J., and NAVE, J., concur.