In re BEDINGFIELD.

(District Court, N. D. Georgia.    May 17, 1899.)

1. BANKRUPTCY—PETITIONING CREDITORS—WITHDRAWAL.

A creditor who joins with others in filing a petition in involuntary bankruptcy against their debtor, the act of bankruptcy alleged being a preferential transfer of the debtor's whole property, but afterwards obtains a settlement of his debt, and transfers his claim, will not be allowed to withdraw from the proceeding when his withdrawal would reduce the amount of debts represented on the petition below the jurisdictional minimum, and so require the dismissal of the proceeding.

2. SAME—INTERVENING CREDITORS.

Where a petition in involuntary bankruptcy, brought in good faith, appears on its face to represent creditors sufficient in number and amount to sustain the jurisdiction, but before adjudication it appears that there is a deficiency in the amount of debts represented, then creditors other than the original petitioners, who have entered their appearance and joined in the petition subsequent to its filing, under Bankruptcy Act, § 59, cl. f, may be reckoned in making up the amount of claims required by the act to support the petition.

In Bankruptcy.    On motion to dismiss petition in involuntary bankruptcy.

Maddox & Terrell, for petitioning creditors.
Jas. L. Key, for bankrupt.

NEWMAN, District Judge.    A petition in involuntary bankruptcy was filed against W. H. Bedingfield. The petitioning creditors amount to $505.70. Very soon after the petition was filed, Carlton & Smith, a mercantile firm, having a debt of $77.08, which firm had joined in the petition in bankruptcy against Bedingfield, gave notice to counsel employed in the case that they desired to withdraw from the bankruptcy proceeding. There is no doubt but that they joined originally in the petition in involuntary bankruptcy, joined in the employment of counsel, and one of the firm—Mr. Smith—made oath to the correctness of the petition. It seems that a very short time —an hour or so—before the petition was filed, probably, the claim of Carlton & Smith was transferred to Fain & Stamps, presumably in the interest of Kelly Bros., who obtained the preference which is the act of bankruptcy alleged. They also notified counsel for the petitioning creditors within a short time after the petition was filed that they did not desire to participate in the same. The question is whether or not this withdrawal should be allowed. It seems to me that it would be very bad practice to countenance such a transaction. If creditors having, as in this case, a number of small claims, amounting to something over $500, join in a petition for involuntary bankruptcy, where there has been a transfer of property and a preference in violation of the bankrupt act, and one of the petitioning creditors can withdraw in order to reduce the amount of the petitioning creditors' debts below $500, it would open the way for debtors giving such a preference, and the person preferred to settle with a portion of the creditors, and thereby defeat the proceeding, however palpable the preference might be. The bankrupt act

has an express provision against any such proceeding. Section 59, cl. g, is as follows: "A voluntary or involuntary petition shall not be dismissed by the petitioner or petitioners or for want of prosecution or by consent of parties until after notice to the creditors." Where a creditor joins in a proceeding in involuntary bankruptcy, and allows the petition to be filed, and afterwards obtains a settlement in some way, it is too late to withdraw from the proceeding in the way attempted here. On the face of the papers, this is a clear preference of one creditor. It appears that the entire property of Bedingfield was transferred to one creditor for an antecedent debt, leaving nothing whatever to the other creditors. If, by the aid of third parties, the debt of one of the creditors can be bought up, so as to reduce the amount below $500, it will enable the debtor to protect his preference, and defeat the whole purpose of the bankrupt act.

Another question involved here is this: The petitioning creditors took to themselves a transfer of the taxes due by Bedingfield, and used that to make up the $500 necessary to file the petition in involuntary bankruptcy. There is grave doubt, under the facts shown, as to their right to do this, and a serious question would be made as to whether there was the necessary amount of indebtedness in the petition in this case if only the original petitioners' debt were to be considered. Before the time for the adjudication in the case arrived, however, Mrs. C. V. Powers, having a debt against Bedingfield of $33.70, filed a petition adopting the allegations of the original petition, and asked to be made a party to the proceeding, which amendment was allowed. Now, can this Powers debt be considered in order to make up the jurisdictional amount? Section 59, cl. f, is as follows: "Creditors other than the original petitioners may, at any time, enter their appearance and join in the petition." Can a creditor, prior to the adjudication, join in the petition so as to make up the amount of $500, necessary to commence proceedings in involuntary bankruptcy, when it appears that for some reason the necessary amount of creditors did not join in the original petition? I am inclined to agree with Judge Lowell, of the district of Massachusetts, who has recently determined this question in the case In re Romanow, 92 Fed. 510. This is what he says on the subject:

"The petition was filed January 28, 1899. On February 14th, Breitstein, a creditor of the respondents, appeared, and sought to join in the petition. The respondents object that he cannot be counted in making up the necessary number of creditors required by section 59 of the bankrupt act. Clause f of that section reads as follows: 'Creditors other than original petitioners may, at any time, enter their appearance, and join in the petition, or file an answer, and be heard in opposition to the prayer of petitioners.' Those who are permitted to 'join in' a petition by so doing commonly become parties to it; and the words 'join in the petition,' as used in clause e and clause b of the same section, plainly carry that implication. It is urged by the respondents that, if this construction be given to clause f, an insufficient number of creditors, or creditors having an insufficient amount of claims, may file a petition against a debtor, and obtain an adjudication, by subsequently procuring other creditors to join with them, such joinder being possible at any time before the petition is dismissed. This practice, it is said, would permit a petition, at the time of its filing insufficient in substance as well as in form, to be made good by subsequent acts. It must be admitted that there is weight in this argument, but the

language of the act is clear; and the inconvenience, if inconvenience there be, was not deemed by congress a controlling consideration in the act of 1867 (see Rev. St. §§ 5021, 5025), nor, in some cases, at least, under the act of 1898 (see section 59, cl. b). I think, therefore, that creditors otherwise competent to appear and join in a petition subsequent to its filing may be reckoned in making up the number of creditors and amount of claims required by section 59."

I think the objection to such practice, which Judge Lowell says was urged before him, that this would allow an insufficient number· of creditors to bring a proceeding, and afterwards build it up to the necessary amount by amendment, is not very serious. It would be necessary in every case, of course, that a petition in involuntary bankruptcy should, on the face of it, show that creditors participated to the amount of $500, before a petition could be filed, or a rule obtained; and these, of course, would have to be participating in good faith. Then, if afterwards, and before adjudication, it should appear that for some reason one or more of the petitioning creditors did not have debts, or their debts were not provable, and other creditors came in, sufficient to make the amount necessary, they could be allowed, and the proceeding stand. The court would never entertain a mere sham petition prepared originally with a view to doing this, but it would be only where a petition was brought in good faith, and some such contingency as has been referred to occurred. I think it clear that Mrs. Powers' debt should be counted in making up the necessary $500, and then, even without the allowance of the debt for taxes,—as to which no opinion is expressed,—there would be petitioning creditors to the necessary amount. The motion to dismiss the proceeding will be denied.