**In re Jacob F. BUTCHER, a/k/a Jake F. Butcher, and Jake Butcher, Debtor.**

**Bankruptcy No. 3–83–01036.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 22, 1983.

Morton, Lewis, King & Kreig, George Morton, Mary M. Farmer, Knoxville, Tenn., for FDIC.

Robertson, Williams, Ingram, Faulkner & Overbey, Shannon D. Faulkner, III, Knoxville, Tenn., for First Peoples Bank.

Miller & Martin, Lawrence R. Ahern, Chattanooga, Tenn., for American Nat. Bank & Trust Co.

Neal & Harwell, James F. Sanders, William T. Ramsey, Nashville, Tenn., for debtor.

Bernstein, Susano, Stair & Cohen, Bernard E. Bernstein, Thomas N. McAdams, Knoxville, Tenn., for Bank of Williamsburg.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

On June 29, 1983, an involuntary chapter 7 proceeding, 11 U.S.C.A. § 303 (1979), was commenced against the debtor by three petitioning creditors (First Peoples Bank of Washington County, American National Bank & Trust Company of Chattanooga, and the Federal Deposit Insurance Corporation). In his answer filed on July 19, 1983, the debtor admitted he is not generally paying his debts as they become due. However, he asserted that: (1) the official who signed the involuntary petition on behalf of First Peoples Bank did so without proper authority; and (2) the guaranty supporting the claim of American National Bank is invalid.

On August 4, 1983, the day immediately preceding the trial on the involuntary petition, the Bank of Williamsburg, a Kentucky banking corporation, filed its petition to join the involuntary petition as an interven-

ing creditor, 11 U.S.C.A. § 303(c) (1979). Also on August 4th, the Federal Deposit Insurance Corporation (FDIC) filed a petition to amend its assertions in the previously filed involuntary petition.[1]

A motion to substitute FDIC in its capacity as receiver for First Peoples Bank was filed on August 5, 1983, the date of trial on the involuntary petition. This motion recites in material part that the Commissioner of the Department of Banking for the State of Tennessee, on or about July 29, 1983, determined that First Peoples Bank was insolvent; that the Bank was closed and the Commissioner assumed administration and management of the Bank; that appointment as receiver of the Bank was tendered to and accepted by FDIC. FDIC in its *receivership* capacity for First Peoples Bank asserts it holds five separate claims against the debtor.

Previous to hearing testimony, the court granted both the petition to amend the original assertions and the substitutionary motion of FDIC. The court also noted the filing of the intervening petition by the Bank of Williamsburg. However, the court did not receive testimony pertaining to the claim of the Bank of Williamsburg at the August 5th trial. Instead, the debtor, who challenges the validity of the Bank of Williamsburg claim, was allowed ten (10) days to answer the intervening petition.[2]

At trial the debtor orally moved to amend his answer. According to the debtor, FDIC may not be two different entities, and, hence, the original petition is jurisdictionally deficient and void because there are only two original petitioning creditors.[3] In contradistinction, FDIC contends it is one entity in its *corporate* capacity, holding claims of three failed banks (United Southern Bank of Nashville, C & C Bank of

---

1. The petition to amend includes allegations, not included in the original petition, explaining the source of the FDIC claims in its *corporate* capacity.

2. The court ruled that trial of the intervening petition would be set after the debtor's answer is filed.

3. Undisputedly, the debtor had more than twelve (12) creditors on the date the involuntary petition was filed. Consequently, a minimum of three (3) entities holding noncontingent claims was necessary to commence the involuntary proceeding against the debtor. 11 U.S.C.A. § 303(b) (1979).

Anderson County, and C & C Bank of Knox County), and that it is a second entity as *receiver* of former First Peoples Bank. The court announced its finding at trial that there are three petitioning entities, excluding Bank of Williamsburg, holding noncontingent claims against the debtor in an aggregate of at least $5,000.00 in excess of any lien(s) on property of the debtor securing the petitioning creditors' claims.[4] This memorandum includes citations of authority supporting the court's previous finding.

Bankruptcy Code § 303(b) provides in material part:

An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability ... if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

. . . .

11 U.S.C.A. § 303(b) (1979).

"Entity," within the context of the Bankruptcy Code, "includes person, estate, trust, [and] governmental unit." 11 U.S.C.A. § 101(14) (1979). "Claim" is defined in the Bankruptcy Code, in material part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, eq-

uitable, secured, or unsecured ...." 11 U.S.C.A. § 101(4) (1979).

Although the dual capacity of FDIC as both a corporate insurer and a receiver is concededly undeniable,[5] the debtor insists that FDIC may not be two separate entities for the purpose of Code § 303(b)(1). The debtor's memorandum recites in part:

[T]he FDIC should be considered one "entity" for purposes of commencing an involuntary petition. The drafters of the new Code sought to assure that three separate decision makers would be required to join an involuntary petition. Clearly, the FDIC is but one decision making unit . . . .

.        .        .        .

[A]llowing the FDIC to join as two petitioning entities would be contrary to the purposes behind the three creditor rule. The FDIC is only one *entity,* even though it may act in two *capacities.* The FDIC is but one "entity" ... whether it is acting as an insuror of operating banks or as a receiver of closed banks. Allowing the FDIC to petition as two creditors reduces the numeric requirement of 11 U.S.C. § 303(b) from a three entity consensus to a two entity agreement.

Debtor's Memorandum in Opposition to Motion to Substitute FDIC as Receiver for First Peoples Bank of Washington County at 12, 14.

The weakness in the debtor's argument is the fact that three separate decision makers did file the involuntary petition.[6] Although the intervening failure of First Peoples Bank has terminated its participation as a

---

**4.** Attorneys for the debtor were afforded eight (8) days to furnish the court with a memorandum supporting their position that FDIC may not be two different entities for the purpose of filing an involuntary bankruptcy petition pursuant to 11 U.S.C.A. § 303(b) (1979). A well-written memorandum was timely filed on behalf of the debtor.

**5.** See 12 U.S.C.A. §§ 1819, 1821(c)–(e), 1823(c)(2)(A) and (d) (1980 & Supp.1983). This dual capacity is likewise recognized in case authority in the Sixth Circuit. See *Gilman v. Fed. Deposit Ins. Corp.,* 660 F.2d 688 (6th Cir.1981) (FDIC under no duty in either of its capacities to examine the assets of a failed

bank previous to executing Purchase and Assumption and Sale of Assets agreements); *Fed. Deposit Ins. Corp. v. Ashley,* 585 F.2d 157 (6th Cir.1978) (FDIC often acts simultaneously in both capacity of insurance corporation and as receiver of an insolvent bank). Also see *Fed. Deposit Ins. Corp. v. Glickman,* 450 F.2d 416 (9th Cir.1981): "[A] distinction must be drawn between FDIC's dual capacity as federal insurer of deposits and as liquidating agent for the [insolvent] bank." *Id.* at 418.

**6.** As a general rule, the filing date is the controlling date for the purpose of determining whether an involuntary petition has been filed by the requisite number of entities.

petitioning creditor, its successor in interest, FDIC in its receivership capacity, has elected to seek substitution and continue prosecution of this involuntary proceeding.[7]

Significantly, 12 U.S.C.A. § 1821(e) (1980) (Corporation as receiver of State banks) enacts in relevant part:

> Whenever any insured State bank (except a District bank) ... shall have been closed ... by the authority having supervision of such bank ... on account of inability to meet the demands of its depositors, the Corporation *shall* accept appointment as receiver thereof, if such appointment is tendered by the authority having supervision of such bank and is authorized or permitted by State law. (Emphasis added.)

The Tennessee Commissioner of Banking[8] did tender the assets of First Peoples Bank to FDIC as receiver for the Bank. Accordingly, FDIC had no choice in the matter; in effect, FDIC in its receivership capacity is an involuntary successor of First Peoples Bank.[9]

Further, there is authority for the proposition that FDIC in a receivership capacity is a distinct party from FDIC in its corporate capacity. *Fed. Deposit Ins. Corp. v. Design & Dev., Inc.,* 73 F.R.D. 442 (E.D.Wis. 1977) involved a collection action of notes purchased by FDIC in its corporate capacity from FDIC as receiver of the insolvent American City Bank. Defendants moved to dismiss on the basis that the claims based upon the notes were compulsory counterclaims which FDIC should assert in defendants' separate actions against FDIC in its receivership capacity. FDIC contended it operated as two distinct entities—as a receiver and in its corporate capacity. The district court, in denying defendants' motions to dismiss, agreed "that the Receiver and the Corporation must be treated as separate parties." *Id.* at 444.

Quite interestingly, the first paragraph of the involuntary petition commencing this proceeding recites: "Come the Petitioners ... and Federal Deposit Insurance Corporation in its corporate capacity ...." Considering the separate and distinct[10] capacities of FDIC in this proceeding, FDIC is one entity in its corporate capacity (holding claims acquired from the FDIC receivership of United Southern Bank of Nashville, C & C Bank of Anderson County, and C & C

---

7. In his answer to the involuntary petition the debtor admitted that First Peoples Bank held claims against him in excess of $5,000.00.

8. The name of the Tennessee Department of Banking was changed, effective May 3, 1983, to the Department of Financial Institutions. Tenn.Code Ann. § 4–3–101(4) (1979), *amended by* Pub.Chp. No. 216, 1983 Advance Legis.Serv. 166 (Michie).

9. The debtor asserts that FDIC is "trafficking" claims in violation of Bankruptcy Rule 1003, which provides in material part:

> (c) TRANSFEROR OR TRANSFEREE OF CLAIM. A transferor or transferee of a claim shall annex to the original and each copy of the petition a copy of all documents evidencing the transfer, whether transferred unconditionally, for security, or otherwise, and a signed statement that the claim was not transferred for the purpose of commencing the case and setting forth the consideration for and terms of the transfer. A person who has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.

Obviously, FDIC did not become receiver of First Peoples Bank for the purpose of commencing the instant involuntary proceeding. The involuntary petition against the debtor preceded the failure of First Peoples Bank. Furthermore, as previously noted, pursuant to 12 U.S.C.A. § 1821(e) (1980), FDIC was required to accept the receivership of First Peoples Bank.

10. *In re Gibraltor Amusements, Ltd.,* 291 F.2d 22 (2d Cir.1961), *cert. denied,* 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961), involved, among other questions, whether Wurlitzer Acceptance Corporation (WAC), a wholly owned subsidiary of Wurlitzer Company, qualified as an intervening petitioning creditor in an involuntary case commenced by Wurlitzer Company. The bankrupt's notes supporting the WAC claim had been purchased from Wurlitzer Company quite some time previous to the involuntary petition date. Since the parent and subsidiary had scrupulously respected their respective separate, corporate existences, and there was no evidence of any attempt to subvert the policies of the Bankruptcy Act, WAC qualified as a petitioning creditor.

Bank of Knox County) and a second entity in its capacity as receiver of First Peoples Bank.[11] A contrary conclusion would be inequitable under the circumstances.[12]

■ The debtor also contends that FDIC in its receivership role for First Peoples Bank has assigned all of the assets of the failed Bank to either the assuming bank [13] or to FDIC in its corporate capacity. Alternatively, the debtor maintains that even if FDIC in its receivership capacity did not sell all of the assets of First Peoples Bank, FDIC failed to prove it holds any claims against the debtor in its receivership role.

The petition of FDIC, as receiver, for an order from the Washington County Chancery Court approving its sale of the assets of First Peoples Bank does provide for an intra-FDIC sale of all assets not purchased by the assuming bank. The chancellor's order approving the sale authorizes FDIC, as receiver, to sell all assets not transferred to the assuming bank to FDIC in its corporate capacity, pursuant to the intra-FDIC Contract of Sale, which includes the following terms:

SECTION 1. PURCHASE OF ASSETS

1.1 *Assets Purchased.* The Receiver does hereby sell to the Corporation all the Receiver's right, title, and interest in certain assets not purchased by the Assuming Bank pursuant to the Purchase and Assumption Agreement. Assets so purchased by the Corporation shall specifically include, but not be limited to, (1) all contracts, rights, claims, demands, and choses in action whatsoever not purchased by the Assuming Bank, (2) all loans subject to an option in favor of the Assuming Bank to purchase such loans at book value and without recourse for a period of sixty (60) calendar days from the date of the Purchase and Assumption Agreement, and (3) all pending claims, actions or judgments, whether known or unknown, which the Receiver owns, holds, or has against any surety, insurer, or any person or persons whomsoever, including, without being limited to, any claim or claims against its directors, officers, or employees arising out of any act or acts of any such persons in respect to the Bank or its property, by virtue of the nonperformance or manner of performance of their duties or against any shareholder or holding company of the Bank. *As a specific exception to those assets sold by the Receiver, it is hereby understood that the Corporation does not purchase hereunder any contract, right, claim, demand or chose in action which is listed by the Receiver within thirty days of Bank Closing on Schedule A attached to this Agreement.* As part consideration for this Agreement, the Receiver will, upon demand of the Corporation, transfer to the Corporation any or all of the contracts, rights, claims, demands, or choses in action, along with any recoveries or funds realized thereupon while still in the Receiver's possession as set forth in Schedule A. (Emphasis added.)

SECTION 4. SCHEDULES

Receiver shall prepare a schedule which will constitute Exhibit "A" and be made a part hereof even though not completed as of date of this Agreement, such schedule to be comprised of the assets referred to in Section 1 hereof.

Since "Schedule A" had not been prepared as of the trial date, the debtor contends that FDIC has failed to differentiate those assets, if any, of First Peoples Bank it holds as receiver from those held in its corporate capacity.

However, the affidavit of Anthony J. Gervolino, a liquidator for FDIC assigned to the receivership of First Peoples Bank, accompanying the FDIC substitutionary motion recites:

---

**11.** As receiver of the assets of an insolvent bank and in accordance with the provisions of 12 U.S.C.A. § 1823(d) (1980), FDIC is statutorily authorized to sell a bank's assets to FDIC in its corporate capacity. However, FDIC in its role as receiver is not required by any statute to so sell the assets of an insolvent bank.

**12.** See note 9, *supra,* and accompanying text.

**13.** The assuming bank is First American National Bank-Eastern. See Coll.Ex. 7.

"4. Pursuant to all transfer documents approved and entered in the Chancery Court for Washington County, Tennessee, FDIC as receiver for the First Peoples Bank of Washington County, Johnson City, Tennessee, holds the following assets . . . ."

The assets particularly described in the affidavit are four past due notes guaranteed by the debtor and a fifth past due note executed by the debtor and his wife. The testimony of Gervolino at the August 5th trial is consistent with the affirmations in his affidavit.[14] Consequently, the court finds that FDIC as *receiver* for First Peoples Bank does hold noncontingent claims against the debtor.

Counsel for the debtor conceded during trial that discovery proceedings revealed that at least one guaranty by the debtor in favor of American National Bank is valid. According to the proof adduced at trial, based on two separate guaranties, American National Bank holds two due and unpaid claims against the debtor, exclusive of interest, in the amounts of $29,835.87 and $30,498.74.

John Paul Neas, former senior vice-president of First Peoples Bank, testified that he was authorized to sign the involuntary petition pursuant to both a resolution and the Bank's by-laws. Neas further testified that rescission of his signature on behalf of First Peoples Bank was never a topic of discussion among the Bank's board of directors.

Based on Gervolino's testimony, the court finds that FDIC as receiver of First Peoples Bank is the holder of noncontingent, past due claims based on guaranties of the debtor to pay four separate notes in the principal amounts of $250,000.00, $690,000.00, $300,000.00, and $675,000.00.[15] Additionally, FDIC as receiver for former First Peoples Bank is the holder of a note in the original amount of $940,000.00 executed by the debtor and his wife. The unpaid princi-

pal balance on this note was $595,354.00, as of January 1, 1983, with interest in the amount of $56,099.55 accrued through June 28, 1983.

The proof adduced at trial also establishes that the debtor is indebted to FDIC in its corporate capacity in an amount in excess of $5,000.00, not secured by liens against the debtor's property, based on claims formerly held by United Southern Bank of Nashville, C & C Bank of Anderson County, and C & C Bank of Knox County. These claims were acquired by FDIC in its capacity as a receiver of the three failed banks and purchased by FDIC in its corporate capacity, pursuant to 12 U.S.C.A. § 1823(c)(2)(A) (Supp.1983).[16]

Accordingly, an order for relief will be entered.

This Memorandum constitutes findings of fact and conclusions of law required by Bankruptcy Rule 7052.

14. The affidavit does not include assertions that two of the five notes held by FDIC in its receivership capacity are past due, but each of the five notes is past due according to Gervolino's trial testimony.

15. The unpaid principal balance on the Bull Run Oil Company, Inc. note dated May 24, 1978, in the principal amount of $675,000.00 was $405,000.00 as of March 1, 1983.

16. See also 12 U.S.C.A. § 1823(d) (1980) (Sale of assets to Corporation).