**In re ALTA TITLE COMPANY, a Utah Corporation, Debtor.**

**Bankruptcy No. 84C–01113.**

United States Bankruptcy Court,
D. Utah.

Nov. 4, 1985.

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, trustee.

David W. Overholt, Gustin, Adams, Kasting & Liapis, Salt Lake City, Utah, for Moore Financial of Utah.

Donald J. Winder, Winder & Haslam, Salt Lake City, Utah, for D. Frank Wilkins.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

This proceeding requires the Court to decide whether the commencement date of an involuntary petition occurs when the original petition is filed by an insufficient number of petitioning creditors, or when the petition is amended to include the requisite number of creditors. Resolution of this issue turns on two questions. First, is the requirement of three or more petitioning creditors a jurisdictional requirement? Second, do amendments to an involuntary petition relate back to the date of the original petition?

### FACTS AND PROCEDURAL BACKGROUND

On April 23, 1984, Moore Financial of Utah ("Moore Financial"), a creditor of Alta Title Company ("Alta Title") with a claim in excess of $100,000.00, filed an involuntary Chapter 7 petition against Alta Title. The petition averred that "[p]etition-

er believes that Debtor has fewer than twelve holders of non-contingent claims." On May 14, Alta Title moved to dismiss the involuntary petition and quash the summons on the basis that it had more than twelve creditors. The motion was supported by the affidavit of James V. Crestani, president of Alta Title, which stated that Alta Title had approximately 150 creditors on the date the petition was filed.

Prior to the June 27, 1984 hearing on the involuntary petition and the motion to dismiss and quash, two additional creditors, Bench Mark Systems, Inc. and Gary Free & Associates, each filed an involuntary petition against Alta Title. At the hearing, the Court found that Moore Financial had not acted in bad faith when it filed the initial involuntary petition, and allowed the creditor 10 days within which to amend its petition and join at least two creditors.

On July 9, 1984, an amended involuntary petition was filed by Moore Financial, Capital Land Management Corporation dba Gary Free & Associates, Bench Mark Systems, Inc., and Rocky Mountain Petroleum Club. This petition was not controverted, and on July 18 the Court entered an order for relief. Duane H. Gillman was appointed trustee on July 19, 1984.

■ On August 23, 1984, D. Frank Wilkins, the superseded trustee for Alta Title under a nonjudicial "trust assignment" for the benefit of creditors, filed a motion to amend the order for relief, or, in the alternative, to determine the commencement date of this involuntary case. The Court

allowed Wilkins to intervene and be heard as a respondent to the involuntary petition.[1] Wilkins requested a determination by the Court that the involuntary case was commenced on July 9, 1984, the date of filing the amended petition, not April 23, 1984, the date Moore Financial filed its initial petition. On October 9, 1984, a hearing was held to consider the motion. Arguments were presented and the parties were directed to submit memoranda. The matter has been under advisement until now.

## DISCUSSION

*The Three Petitioning Creditor Requirement*

A case under Title 11 is commenced by filing a petition under Section 301, 302, 303, or 304 of the Bankruptcy Code. Once commenced, the district court has original and exclusive jurisdiction over the bankruptcy case. 28 U.S.C. § 1334(a). Section 303(b)(1) of the Bankruptcy Code provides that an involuntary case may be commenced by three or more entities[2] that hold claims[3] against the debtor which are not contingent as to liability and aggregate at least $5,000.00 more than the value of any lien securing their claims. If the debtor has fewer than twelve such creditors, excluding any employee or insider[4] of the debtor and any transferee of a voidable transfer, Section 303(b)(2) provides that the petition may be filed by a single creditor.

An involuntary petition must end either in the entry of an order for relief against

---

**1.** Disputes have often arisen between bankruptcy trustees in involuntary cases and receivers and assignees under assignments for the benefit of creditors, whose custodianships are terminated by the intervention of bankruptcy. Bankruptcy Rule 1011(a), like its predecessors, former Bankruptcy Rule 112 and Section 18(b) of the Bankruptcy Act, former 11 U.S.C. § 41(b) (repealed), did not allow creditors and other parties in interest to contest an involuntary petition. *See Carlson Plywood Co., Inc. v. Vytex Plastics Corp.,* 519 F.2d 556, 557–58 (7th Cir. 1975); *Commercial Credit Corp. v. Skutt,* 341 F.2d 177, 179–80 (8th Cir.1965). Superseded custodians do not enjoy an absolute right to intervene in involuntary cases but where, as here, a substantial jurisdictional issue has been

raised concerning the entry of the order for relief, this Court possesses the power, in its discretion, to permit intervention. *See In re National Republic Co.,* 109 F.2d 167, 170 (7th Cir., *cert. denied sub nom. Arbetman v. Reconstruction Finance Corporation,* 309 U.S. 671, 60 S.Ct. 614, 84 L.Ed. 1017 (1940); *In re A & B Liquidating, Inc.,* 18 B.R. 922, 924–25, 8 B.C.D. 1199, 6 C.B.C.2d 342 (Bkrtcy.E.D.Va.1982). *See generally* 2 COLLIER ON BANKRUPTCY ¶ 18.-33[1.4], at 112–15 n. 28 (14th ed. 1976).

**2.** 11 U.S.C. § 101(14).

**3.** 11 U.S.C. § 101(4).

**4.** 11 U.S.C. § 101(28).

the debtor or dismissal of the creditors' petition. 11 U.S.C. § 303(h), (i), and (j); Bankruptcy Rule 1013(a). *See In re St. Lawrence Condensed Milk Corporation*, 9 F.2d 896, 899 (2d Cir.1925). If the petition is not timely controverted, the debtor waives its defenses and the court must order relief against the debtor. 11 U.S.C. § 303(h); Bankruptcy Rule 1013(b). *See In re Mason*, 709 F.2d 1313, 1318, 11 B.C.D. 226 (9th Cir.1983); *E.L. "Bunch" Hullet, Inc. v. Universal C.I.T. Credit Corp.*, 259 F.2d 685, 689 (10th Cir.1958). *Cf. Sheehan & Egan v. North Eastern Shoe Co.*, 47 F.2d 487, 489 (1st Cir.1931). But if the debtor files an answer controverting the petition, certain factual and legal determinations must be made by the court in order for it to retain jurisdiction over the case. These determinations include whether the debtor is a farmer or charitable corporation, whether sufficient creditors with sufficient claims have joined in the petition, and whether the debtor meets the eligibility requirements of 11 U.S.C. § 109(b) and (d). If the court finds that any of the required determinations are adverse to the petitioning creditor(s), the case must be dismissed and damages, including attorneys' fees, awarded to the debtor. 11 U.S.C. § 303(i); *In re Johnson*, 13 B.R. 342, 346, 7 B.C.D. 1331, 4 C.B.C.2d 1482 (Bkrtcy.D.Minn.1981). *See In re Godroy Wholesale Co., Inc.*, 37 B.R. 496, 10 C.B. C.2d 249 (Bkrtcy.D.Mass.1984).

Once the debtor puts in issue the number of creditors, it must file with its answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. Bankruptcy Rule 1003(d).[5] After the debtor files its answer asserting that it has twelve or more creditors and listing all its credi-

tors, the petitioning creditor may solicit other creditors to join in the petition and the debtor may solicit the creditors *not* to unite in the petition. *See In re Brown*, 111 F. 979, 980 (E.D.Mo.1901); Advisory Committee Note to former Bankruptcy Rule 104(e).

Section 303(c) permits creditors other than the original creditor(s) to join in the petition with the same effect as if the joining creditor had been one of the original petitioning creditors.[6] If a petitioning creditor is disqualified, another may be allowed to join the petition and the case will not be dismissed for want of three creditors. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 322 (1977), 1978 U.S.Code Cong. & Admin.News, pp. 5787, 6287; S.Rep. No. 95–989, 95th Cong., 2d Sess. 33 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5819. This joinder must occur before the case is dismissed or relief is ordered. The procedure for joinder of other creditors is set forth in Bankruptcy Rule 1003(d). Section 303(c) and Rule 1003(d) contemplate that one-person petitions might be mistaken as to the number of creditors, and provide a means for curing the defect. *See In re Crown Sportswear, Inc.*, 575 F.2d 991, 993 (1st Cir.1978).

Great stress is laid upon the use of the word "commenced" in Section 303(b)(1). Wilkins argues that since an involuntary case must be *commenced* by three or more creditors when the debtor has twelve or more creditors, jurisdiction does not attach until joinder occurs. Therefore, so the argument goes, the commencement date of this involuntary case cannot be earlier than the date upon which two or more qualified creditors joined in the petition of Moore Financial.

---

5. *Cf.* 11 U.S.C. § 95(d) (repealed). *See In re Rassi*, 701 F.2d 627, 629, 10 B.C.D. 385 (7th Cir.1983); *In re Averil, Inc.*, 33 B.R. 562, 563 (Bkrtcy.S.D.Fla.1983); *In re St. Lawrence Condensed Milk Corporation*, 9 F.2d 896, 899 (2d Cir.1925). *See generally* Note, "Counting Creditors and Petitioning Creditors in Bankruptcy," 48 Iowa L.Rev. 833, 836–37 (1963.)

6. *See also Matter of Acord Ventilating Company*, 221 F.2d 899, 901 (7th Cir.1955); *In re Inman*, 57 F.2d 595, 596 (D.Wyo.1932); *In re Mason*, 12 B.R. 316, 317 (Bkrtcy.D.Nev.1981), *aff'd* 20 B.R. 650, 9 B.C.D. 163 (Bkrtcy.App.Pan. 9th Cir. 1982), *aff'd* 709 F.2d 1313, 11 B.C.D. 226 (9th Cir.1983); *In re J.V. Knitting Services, Inc.*, 4 B.R. 597, 598, 2 C.B.C.2d 223 (Bkrtcy.S.D.Fla. 1980); *In re Trans-High Corp.*, 3 B.R. 1, 4, 6 B.C.D. 85, 1 C.B.C.2d 645 (Bkrtcy.S.D.N.Y.1980).

■ The court's jurisdiction over an involuntary case is statutory and not dependent upon the accuracy and precision of the averments made in the petition. *See In re Claudon,* 73 F.2d 876, 878 (7th Cir.1934); 2 COLLIER ON BANKRUPTCY ¶ 18.05, at 22 (14th ed. 1976). The filing of a petition sufficient on its face clearly gives the bankruptcy court jurisdiction over an involuntary case. *Canute Steamship Co. v. Pittsburgh Coal Co.,* 263 U.S. 244, 248, 44 S.Ct. 67, 68, 68 L.Ed. 287, (1923). While some courts have labeled the three petitioning creditor requirement "jurisdictional," [7] this requirement is not jurisdictional in the sense of subject matter jurisdiction, but is a substantive matter which must be proved or waived if put in issue.[8] In contrast, parties cannot confer subject matter jurisdiction upon the bankruptcy court by agreement, waiver, or consent.[9]

### The Good Faith Rule

The relative ease with which creditors can force a financially distressed debtor into bankruptcy makes involuntary bankruptcy a dangerous weapon in the hands of a single creditor. Although the liberal joinder provisions of Bankruptcy Rule 1003(d) enable a single petitioning creditor to cure a defective petition, "[t]he three creditor requirement is not a meaningless formality that a creditor may ignore until after filing the petition." *Basin Electric Power Cooperative v. Midwest Processing Company,* 769 F.2d 483, 486 (8th Cir.1985).

■ If an involuntary petition is proper and complete, the motives of the petitioning creditor(s) are irrelevant. *See In re Automatic Typewriter & Service Co.,* 271 F. 1, 4 (2d Cir.1921); *In re Pickering Lumber Co.,* 1 F.Supp. 82, 83 (W.D.Mo.1932). Nonetheless, courts have consistently held that an essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the original petition was filed in good faith, and not as a fraudulent attempt to confer jurisdiction upon the court with a view of being later supported by intervention of other creditors.[10]

---

**7.** *See, e.g., Harris v. Capehart-Farnsworth Corporation,* 225 F.2d 268, 270 (8th Cir.1955); *In re National Republic Co., supra,* 109 F.2d at 170; *Matter of Bichel Optical Laboratories, Inc.,* 299 F.Supp. 545, 548 (D.Minn.1969); *In re Missco Homestead Ass'n, Inc.,* 86 F.Supp. 511, 520 (E.D. Ark.1949); *In re Murray,* 14 F.Supp. 146 (W.D. N.Y.1936); *In re McIsaac,* 19 B.R. 391, 397 (Bkrtcy.D.Mass.1982).

**8.** *See In re Cooper School of Art, Inc.,* 709 F.2d 1104, 1105, 10 B.C.D. 971 (6th Cir.1983) (per curiam); *E.L. "Bunch" Hullet Inc. v. Universal C.I.T. Credit Corp., supra,* 259 F.2d at 689; *Harris v. Capehart-Farnsworth Corp., supra,* 225 F.2d at 270; *General Kontrolar Co. v. Allen,* 124 F.2d 123, 127 (7th Cir.1940); *In re National Republic Co., supra,* 109 F.2d at 170; *In re St. Lawrence Condensed Milk Corp., supra,* 9 F.2d at 899; *In re Plymouth Cordage Co.,* 135 F. 1000, 1004 (8th Cir.1905); *In re Earl's Tire Service,* 6 B.R. 1019, 1023, 6 B.C.D. 1205, 3 C.B.C.2d 205 (D.Del.1980); *In re Cooper,* 12 F.2d 485 (D.Mass. 1926); *In re Mason,* 20 B.R. 650, 651, 9 B.C.D. 163 (Bkrtcy.App.Pan. 9th Cir.1982), *aff'd* 709 F.2d 1313, 1318-19 (9th Cir.1983); *In re McIsaac, supra,* 19 B.R. at 397; *In re Belize Airways, Ltd.,* 18 B.R. 485, 489, 8 B.C.D. 1177 (Bkrtcy.S.D. Fla.1982); *In re Burton C. Lauer,* No. 880-01582-20, unpublished memorandum opinion at 5–6 (Bkrtcy.E.D.N.Y. Dec. 3, 1981); *In re Johnson,* 13 B.R. 342, 346, 7 B.C.D. 1331, 4 C.B.C.2d 1482 (Bkrtcy.S.D.Minn.1981). *See generally* 2

COLLIER ON BANKRUPTCY ¶ 303.15[6], at 303–68 to 303–69 (15th ed. 1985); 2 COLLIER ON BANKRUPTCY ¶ 18.05, at 22 (14th ed. 1976). *Cf. In re Rubin,* 769 F.2d 611, 614 n. 3 (9th Cir.1985).

**9.** *First State Bank and Trust Co. v. Sand Springs State Bank,* 528 F.2d 350, 354 (10th Cir.1976). *See Lindsey v. Ipock,* 732 F.2d 619, 622 n. 2 (8th Cir.), *cert. denied sub nom. Cryts v. French,* — U.S. —, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984).

**10.** *See, e.g., In re Crofoot, Nielsen & Co.,* 313 F.2d 170, 171 (7th Cir.1963); *Sun-Lite Awning Corp. v. E.J. Conklin Aviation Corp.,* 176 F.2d 344, 346 (4th Cir.1949); *In re Harris,* 299 F. 395, 398, 39 A.L.R. 252 (1st Cir.1924); *In re Gibraltor Amusements, Limited,* 187 F.Supp. 931, 934 (E.D.N.Y.1960), *aff'd* 291 F.2d 22 (2d Cir.), *cert, denied* 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed.2d 190 (1961); *Matter of Security Motor Co.,* 51 F.Supp. 559, 561 (W.D.Mo.1943), *appeal dismissed* 142 F.2d 462 (8th Cir.1944); *Manning v. Evans,* 156 F. 106, 109 (D.N.J.1907); *In re Stein,* 130 F. 377, 378 (E.D.Pa.1904); *In re Bedingfield,* 96 F. 190, 192 (N.D.Ga.1899). *See generally,* Weintraub & Resnick, "Involuntary Petitions Under the New Bankruptcy Code," 97 Banking L.J. 292, 303–04 (1980). *Cf. Matter of Trans-High Corp.,* 3 B.R. 1, 3–4, 6 B.C.D. 85, 1 C.B.C.2d 509 (Bkrtcy.S.D.N.Y. 1980) (timely intervention by good faith credi-

*Myron M. Navison Shoe Co. v. Lane Shoe Co.*, 36 F.2d 454 (1st Cir.1929), is the leading and most often cited case for the "good faith" rule in single petitioning creditor cases. In that case, a single creditor, Lane Shoe Company, filed an involuntary petition alleging that all of the creditors of the Navison Shoe Company, Inc. were less than twelve in number. In its answer the alleged bankrupt specifically denied that on the date of filing the petition it had fewer than twelve creditors, and averred that the allegation in the petition as to the number of creditors was false, and fraudulently inserted for the purpose of circumventing the provisions of the Bankruptcy Act. Annexed to its answer was a list of 29 creditors. A special master was appointed by the court to ascertain and report the facts. The master found that after the debtor made an assignment for the benefit of its creditors, the assignee notified Lane Shoe Company advising of the assignment and stating that the corporation had "about thirty creditors." The master further found that four days prior to filing the petition, in an answer to an interrogatory propounded by Lane Shoe Company in another action, the debtor also indicated that it had "about thirty creditors." The master ultimately ruled that there were, at the time of filing the petition, fewer than twelve creditors which could be counted, after having disqualified most of the claims for various reasons. The district court approved the recommendation of the master and entered an order adjudicating the Navison Shoe Company a bankrupt. On appeal, the First Circuit reversed, finding that the lower court erred in disqualifying many of the creditors, but concluded that the petition should have been dismissed for lack of good faith on the part of Lane Shoe Company:

> There is, however, a further ground upon which we think the creditor's petition should be dismissed, and that is, that the conclusion to be drawn from the primary facts found by the master is clear—that the Lane Shoe Company, on November 10, 1928, when it filed the petition, in which it alleged that the creditors of the Navison Shoe Company, Inc., were less than twelve, did so *knowing that the allegation was false; or did so recklessly not caring whether the allegation, which it affirmed as of its own knowledge to be true, was true or false, and, being false, its conduct was a fraudulent attempt to confer jurisdiction upon the court, where none existed.*

36 F.2d at 459 (emphasis added). The court held that the petitioning creditor's filing of the involuntary petition with knowledge of the nearly 30 creditors amounted to fraud "for one cannot affirm as of his own knowledge a thing to be true, intending it to be relied on, if he suspects it to be false, without being guilty of fraud." *Id.*

The "good faith" rule of *Myron M. Navison Shoe Co., Inc. v. Lane Shoe Co.* was applied by the district court in *In re Security Motor Co., supra,* 51 F.Supp. at 559. In that case, the alleged bankrupt was engaged in the business of buying and selling used automobiles. Interstate Securities Company, a finance company, bought the alleged bankrupt's commercial paper and made loans to finance its operation. Upon discovering that the alleged bankrupt's books and records did not reflect its true financial condition and that it was borrowing from other lenders and pledging as collateral the same automobiles which secured loans from Interstate Securities Company, the finance company filed an involuntary petition against Security Motor Company. The petition contained an averment that the alleged bankrupt had fewer than twelve creditors. An answer was filed, together with a verified list of creditors, which were more than twelve in number. Although a sufficient number of creditors later joined in the petition, the alleged bankrupt sought dismissal of the petition on the ground that the petition was filed in bad faith because the single petitioning creditor knew or should have known that there were far more than twelve creditors. The alleged bankrupt contended that a peti-

tors saved petition filed in bad faith by single creditor).

tion filed in bad faith was a fraud on the court which could not be cured by the joining of other qualified creditors.

The matter was referred to a special master, who found from "voluminous" evidence that the original petition was filed in good faith and upon an honest belief that the number of creditors was less than twelve. The district court approved the findings of the special master, confirmed his report, and denied the motion to dismiss the involuntary petition. The district court noted that "it was contemplated by Congress that a single qualified petitioning creditor might reasonably be mistaken in an averment that there were less than twelve creditors," but "[i]n such event it was not contemplated that the petition should be dismissed but that the sole creditor might be joined by a sufficient number of other qualified creditors so as to warrant the further proceeding in bankruptcy." 51 F.Supp. at 560–61.

In *In re Rite-Cap, Inc., supra,* 1 B.R. at 740, Tecknor Apex, a creditor of Rite-Cap, Inc., filed an involuntary petition against the latter alleging that it had permitted the appointment of a state court receiver, an act of bankruptcy under Section 3(a)(5) of the former Bankruptcy Act, 11 U.S.C. § 21(a)(5) (repealed). Rite-Cap moved to dismiss the creditor's petition on the ground that Tecknor Apex was estopped to act as a petitioning creditor because of its participation in the alleged act of bankruptcy. Shortly after the motion to dismiss was filed, another creditor, Long Mile Rubber Co., sought to join the involuntary petition so as to cure any defect arising from Tecknor Apex's participation in the act of bankruptcy.

Rite-Cap objected to the joinder of Long Mile Rubber on the ground that the petitioning creditor's bad faith precluded curative joinder by another creditor. In its memorandum opinion, the bankruptcy court noted that "[a]n essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the petition was filed initially in good faith. If the original petition was a sham, prepared with a view of being later supported by the intervention of other creditors, joinder should be denied." *Id.* at 741. The court found that the conclusory statements of the debtor's counsel, which were all that was offered on the question of bad faith, did not constitute evidence and failed to satisfy its burden of proof.

In *Basin Electric Power Cooperative v. Midwest Processing Company,* 769 F.2d 483 (8th Cir.1985), the most recent decision to consider and apply the "good faith" rule, an involuntary petition was filed by Basin Electric against Midwest Processing Company. The petition contained *no* allegation that Midwest had fewer than twelve creditors. Although Midwest had more than twelve creditors, none joined in the involuntary petition. Midwest Processing moved to dismiss the petition for lack of the requisite number of petitioning creditors, supporting its motion with a list of over 100 of its creditors. The bankruptcy court denied the motion without prejudice and permitted Basin Electric to solicit intervening creditors.

At the trial on the involuntary petition, the court found that Basin knew that Midwest had twelve or more creditors but simply ignored the requirements of Section 303(b). Evidence was also presented which showed that the debtor's largest creditors desired that the bankruptcy case be dismissed. Midwest renewed its motion to dismiss, contending that the petition and motions to intervene were filed in bad faith. The bankruptcy court again denied the motion to dismiss, and an appeal was taken to the district court. *Basin Electric Power Cooperative v. Midwest Processing Company,* 47 B.R. 903 (D.N.D.1984). The district court reversed, holding that the bankruptcy court erred in not dismissing the involuntary petition for failure to meet the three creditor requirement of Section 303(b) and by reason of Basin's bad faith. The court found that Basin had "attempted to invoke the jurisdiction of the bankruptcy court to affect a contract dispute." *Id.* at 909. The Eighth Circuit affirmed the district court, holding that the bad faith on

the part of Basin justified dismissal of the involuntary petition. 769 F.2d at 486–87. *Cf. Manning v. Evans, supra,* 156 F. at 109.

 Courts have disagreed in their application of the good faith test to single creditor petitions. Some courts have applied a *subjective* standard, in which the creditor's motivations as well as its conduct should be considered,[11] while others have applied an *objective* standard, and looked to whether a reasonable person in the position of the petitioning creditor would have initiated the involuntary case.[12] In addition, some courts have likened an allegation of bad faith to a claim of fraud, and required proof by clear and convincing evidence.[13] In this Court's view, the good faith test is

analogous to the duty imposed by Rule 11, Fed.R.Civ.P., and Bankruptcy Rule 9011,[14] of investigating the facts and the law prior to the signing and submission of any pleading or paper, and the same standards should apply. *See In re Herriott,* 1 B.C.D. 793, 795 (Bkrtcy.D.Mass.1975). *Cf. In re Crown Sportswear, Inc., supra,* 575 F.2d at 994.

Rule 11 of the Federal Rules of Civil Procedure was amended effective August 1, 1983, at the same time its nearly identical counterpart, Bankruptcy Rule 9011, also became effective. Under these rules, what an attorney is deemed to certify is *both* (1) his or her "knowledge, information, and belief *formed after reasonable inquiry "*—an objective test,[15] and (2) the

**11.** *See, e.g., Basin Electric Power Cooperative v. Midwest Processing Company,* 47 B.R. 903, 909 (D.N.D.1984), *aff'd* 769 F.2d 483 (8th Cir.1985); *In re Crofoot, Nielsen & Co., supra,* 313 F.2d at 172 (in order to dismiss single creditor petition without notifying other creditors, fraud must be found); *Myron M. Navison Shoe Co. v. Lane Shoe Co., supra,* 36 F.2d at 454.

**12.** *See, e.g., In re Crown Sportswear, Inc., supra,* 575 F.2d at 993–94; *In re Gibraltar Amusements Ltd., supra,* 187 F.Supp. at 934; *In re Midwest Processing Co.,* 41 B.R. 90, 102 (Bkrtcy.N.D. 1984).

**13.** *See e.g., In re Crofoot, Nielsen & Co., supra,* 313 F.2d at 172 n. 3; *In re Security Motor Co., supra,* 51 F.Supp at 561 (applying Missouri law).

**14.** Bankruptcy Rule 9011 provides in pertinent part:

SIGNING AND VERIFICATION OF PAPERS
(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose,

such as to harrass, [sic] to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

**15.** *See also Frazier v. Cast,* 771 F.2d 259, 263 (7th Cir.1985) (the standard under amended Rule 11 is an objective one); *Westmoreland v. C.B.S. Inc.,* 770 F.2d 1168, 1177 (D.C.Cir.1985) (Rule 11 now incorporates, through its language "formed after reasonable inquiry," an objective test); *In re TCI Limited,* 769 F.2d 441, 450 (7th Cir.1985) (under 28 U.S.C. § 1927 and Rule 11, litigation must be grounded in an objectively reasonable view of the facts and the law); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) (showing of subjective bad faith is no longer required to trigger Rule 11 sanctions); *Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252, 261 (E.D.Mich. 1985) (unlike subjective good faith, "reasonable inquiry" is empirically verifiable, inasmuch as the court can examine the efforts undertaken by the attorney to investigate his or her claim prior to filing suit); *Marco Holding Co. v. Lear Siegler, Inc.,* 606 F.Supp. 204, 211 (N.D.Ill.1985) (under new version of Rule 11, standard to be applied is one of reasonableness); *In re Ronco, Inc.,* 105 F.R.D. 493, 497, 1 Fed.R.Serv.3d 1383 (N.D.Ill. 1985) (Rule 11 dictates an objective test rather than former subjective bad faith standard).

absence of "any improper purpose"—a subjective test. *In re Ronco, Inc.,* 46 B.R. 444, 454 (N.D.Ill.1985). *See generally,* W. Schwarzer, "Sanctions Under the New Federal Rule 11—A Closer Look," 104 F.R.D. 181, 186–93 (1985). According to the Advisory Committee Note, the new standard "is one of reasonableness under the circumstances," but "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." Advisory Committee Note, Rule 11, Fed.R.Civ.P. The absence of such a prefiling inquiry will generally support a finding of bad faith in single petitioning creditor cases.[16]

■ Having determined that the good faith test must look to the petitioning creditor's prefiling inquiry and the absence of any improper purpose in filing the petition, the Court turns next to the proper standard and order of presentation of proof.

■ Because good faith is presumed, the burden of showing bad faith rests with the objector, in this case Wilkins.[17] Inasmuch as this Court has rejected the view that the bad faith test in single creditor cases is

tantamount to a finding of fraud by the petitioning creditor, it follows that the higher standard of proof required for fraud or dishonesty should not be required. Accordingly, this Court holds that in a proceeding to dismiss a single creditor petition for bad faith, or to prevent joinder of additional creditors, the movant has the burden of proving by a preponderance of the evidence the petitioner's bad faith.[18]

■ In the present case, Wilkins has offered no evidence at all on the issue of bad faith. His argument rests instead on his view that Moore Financial's petition was defective on its face, and therefore filed in bad faith, because Moore Financial averred on "belief" that the debtor had fewer than twelve creditors. However, an averment of the number of petitioning creditors based on "information and belief," without more, has never been held to constitute bad faith so as to preclude joinder by other creditors.[19] While it is conceivable that an involuntary petition might be so clearly defective on its face as to warrant dismissal,[20] generally it should be

---

**16.** *Compare Basin Electric Power Co-Op v. Midwest Processing Co., supra,* 47 B.R. at 907–08 (petitioning creditor simply ignored the three creditor requirement) *and In re Godroy Wholesale Co., Inc.,* 37 B.R. 496, 500, 10 C.B.C.2d 249 (Bkrtcy.D.Mass.1984) (petitioning creditor had duty to make inquiries beyond asking employee of hardware store chain about alleged debtor's credit reputation and history of bill paying) *with In re Crown Sportswear, Inc., supra,* 575 F.2d at 993 (cursory investigation by petitioning creditor held sufficient to withstand bad faith claim).

**17.** *See In re Crown Sportswear, supra,* 575 F.2d at 993, citing 3 COLLIER ON BANKRUPTCY ¶ 59.30, at 648 (14th ed. 1977); *In re Crofoot, Nielsen & Co., supra,* 313 F.2d at 170; *In re Rite-Cap, Inc., supra,* 1 B.R. at 740; *In re Herriott, supra,* 1 B.C.D. at 793.

**18.** *Cf. Farmers Co-Operative Ass'n of Talmage v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982) (proof of fraudulent concealment or of making a false oath, in order to bar discharge, need be shown only by a preponderance of the evidence); *Boone v. Royal Indemnity Company,* 460 F.2d 26, 29 n. 3 (10th Cir.1972) (the preponderance

of the evidence standard, which is applicable to all civil actions, does not change in a circumstantial case).

**19.** *See In re Crofoot, Nielsen & Co., supra,* 313 F.2d at 170; *Matter of Acord Ventilating Company, supra,* 221 F.2d at 900; *In re Haskell,* 73 F.2d 879, 880 (7th Cir.1934); *In re Inland Discount Corp.,* 247 F.Supp. 335, 336 (E.D.Mo.1965); *Providence Box & Lumber Co. v. Goodrich-Daniell Lumber Corp.,* 80 F.Supp. 61, 62 (D.Vt.1948); *In re Federal District Trust,* 6 F.Supp. 572, 573 (D.Mass.1934); *In re Seifred,* 293 F. 936, 937 (D.Mass.1923), *aff'd* 4 F.2d 305 (1st Cir.1925); *In re Mason,* 20 B.R. 650, 651, 9 B.C.D. 163 (Bkrtcy. App.Pan. 9th Cir.1982), *aff'd* 709 F.2d 1313, 11 B.C.D. 226 (9th Cir.1983); *In re Allen, Rogers & Co.,* 30 B.R. 27, 28 (Bkrtcy.S.D.N.Y.1983). *See also* Bankruptcy Rule 1003(a).

**20.** *See In re St. Lawrence Condensed Milk Corp., supra,* 9 F.2d at 899; *In re Inland Discount Corporation, supra,* 247 F.Supp. at 335; *Matter of Eastern Supply Co.,* 170 F.Supp. 246, 248 (W.D.Pa.1959); *In re Lande,* 20 F.Supp. 26, 27 (S.D.N.Y.1937). *Cf. Canute S.S. Co. v. Pittsburgh & West Virginia Coal Co., supra,* 263 U.S. at 244, 44 S.Ct. at 67.

treated with the same liberality as a civil complaint.[21]

*Relation Back of Joinder by Intervening Creditors*

 Under Section 303(c), creditors who join in an involuntary petition cure defects in the original as to the number of petitioning creditors and the amount and nature of their claims. Although Congress intended for the procedure for joinder of additional creditors to be dealt with by the Bankruptcy Rules,[22] Rule 1003(d) does not specify the form of pleading or paper required to effect joinder. Courts have recognized an effective joinder where creditors have filed a motion to amend the original petition,[23] a motion to join or intervene,[24] or by filing intervening petitions or an amended petition.[25] In the present case, separate additional petitions were filed by the joining creditors, and, after the hearing on June 27, 1984, an amended petition was filed. Because no particular method of joining in a petition is prescribed by the Bankruptcy Rules, or by the Local Rules of this Court, the Court finds that the creditors in this case have properly joined in the involuntary petition filed by Moore Financial.[26]

In *Canute S.S. Co. v. Pittsburgh & West Virginia Coal Co., supra,* 263 U.S. at 244, 44 S.Ct. at 67, the Supreme Court held that creditors who join in an involuntary petition are to be counted in determining whether the three petitioning creditor requirement has been met. The court discussed the effect of such joinder, as follows:

> Such intervention by other creditors is not an amendment to the original petition or equivalent to the filing of a new petition, but is, in the specific language of the act, a "joining in" the original petition itself. And other creditors thus joining in the original petition necessarily acquire the status of petitioning creditors as of the date on which the original petition was filed, and may thereafter avail themselves of its allegations, including those relating to the commission of the act of bankruptcy, as fully as if they had been original petitioners.

*Id.* at 248–49,[27] 44 S.Ct. at 68.

In *Commercial Credit Corporation v. Skutt, supra,* 341 F.2d at 177, the court was called upon to decide the effective date of a defective involuntary petition. The petition was filed on June 3, 1963, but failed to allege the debtor's insolvency on

**21.** *In re Longhorn 1979–II Drilling Program,* 32 B.R. 923, 10 B.C.D. 1435 (Bkrtcy.W.D.Okla. 1983).

**22.** H.R.Rep. No. 95–989, 95th Cong., 1st Sess. 293 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6250.

**23.** *See e.g., In re All Media Properties,* 5 B.R. 126, 138, 6 B.C.D. 586, 2 C.B.C.2d 499 (Bkrtcy.S.D. Tex.1980), *aff'd* 646 F.2d 193 (5th Cir.1981).

**24.** *See, e.g, In re Midwest Processing Co.,* 41 B.R. 90 (Bkrtcy.N.D.1984); *In re Butcher,* 32 B.R. 572, 573, 10 B.C.D. 1197 (Bkrtcy.E.D.Tenn. 1983); *In re North County Chrysler-Plymouth,* 13 B.R. 393, 7 B.C.D. 1409 (Bkrtcy.W.D.Mo.1981); *In re Rush,* 10 B.R. 526 (Bkrtcy.N.D.Ala.1981). *Cf. In re Bokum Resources Corp.,* 26 B.R. 615, 623, 7 B.C.D. 605 (D.N.M.1982) (intervening creditors should, but are not required to, file a motion to intervene).

**25.** *See, e.g., Matter of Accord Ventilating Company, supra,* 221 F.2d at 899; *Lubell Brothers, Inc. v. M.J.L. Shoe Shops,* 56 F.2d 158, 159 (3rd Cir.1932); *In re Gibraltar Amusements, Ltd., su-* pra, 187 F.Supp. at 934; *In re Nazarian, supra,* 5 B.R. at 279.

**26.** *Cf. In re Inland Discount Corporation, supra,* 247 F.Supp. at 337 (joinder of intervening creditors by amendment of petition is desirable from the standpoint of good pleading). *Compare* Forms No. 27 (Motion to Join an Additional Creditor in Involuntary Petition) *and* No. 28 (Motion of Creditor to Intervene as Creditor in Involuntary Petition), 5 COLLIER ON BANKRUPTCY, at 1–73 to 1–76 (14th ed. 1978), *with* Form No. 295 (Petition for Leave to Intervene and be Joined as a Petitioning Creditor), REMINGTON ON BANKRUPTCY—FORMS VOLUME, at 147–48 (6th ed. J. Henderson 1955), *and* Application by Creditor to Join in Involuntary Petition, 8 BANKRUPTCY SERVICE LAWYERS EDITION § 71:19, at 32 (1979).

**27.** *See also Syracuse Engineering Co. v. Haight,* 110 F.2d 468, 469 (2d Cir.1940); *Guterman v. C.D. Parker & Co.,* 86 F.2d 546, 549 (1st Cir. 1936); *Moulton v. Coburn,* 131 F. 201, 204 (1st Cir.1904); *In re Romanow,* 92 F. 510, 512 (D.Mass.1899).

the filing date. On June 25, 1963 the debtor entered an appearance and consented to being adjudged a bankrupt. Commercial Credit Corporation, a creditor which was alleged in the involuntary petition to have received a preferential transfer, filed an objection to the court's jurisdiction. The district court held that the creditor's petition on its face failed to confer jurisdiction but the debtor's answer admitting its insolvency and consenting to an adjudication effectively cured the defect. The court further held that the effective date of the adjudication in bankruptcy for all purposes was June 25, 1963, the date the debtor filed its answer.

Upon his appointment and qualification, the trustee sought relief from the court's order fixing the effective date of adjudication and a determination that the effective date of the court's bankruptcy jurisdiction was June 3, 1963, the date the original involuntary petition was filed. After a hearing, the district court sustained the trustee and Commercial Credit Corp. appealed.

The Eighth Circuit held, first, that a creditor lacks standing to oppose an adjudication in bankruptcy. It then rejected the argument that the petition was so fatally defective as to deprive the district court of jurisdiction, stating

> A defective petition in bankruptcy presents no different problem from a defective complaint generally. It does not deprive the court of jurisdiction and is subject to amendment [....] The defective pleadings here were not so unsubstantial or without color of merit as to preclude the District Court from taking jurisdiction over the involuntary petition in bankruptcy.

341 F.2d at 181 (citation omitted). *See also* 2 COLLIER ON BANKRUPTCY ¶ 18.-25–.26, at 73–77 (14th ed. 1976); 1 REM-INGTON ON BANKRUPTCY § 238, at 372–74 (5th ed. J. Henderson 1950).

■ The involuntary petition filed against Alta Title was sufficient on its face to confer jurisdiction to this Court. No bad faith on the part of the petitioning creditor has been shown. Therefore, this Court holds that the joinder of the additional petitioning creditors relates back to the date of filing the original petition.

### CONCLUSION

■ The three petitioning creditor requirement is not a jurisdictional fact, but a defense to be pled by the debtor, or waived. It is indispensable to the maintenance of an involuntary petition that the existence of three qualified creditors be established, if challenged.[28] A pleading defect in this regard does not affect the court's power to proceed with the case, but only affects the petitioning creditor's cause of action. In contrast, subject matter jurisdiction may not be conferred upon the bankruptcy court by consent or waiver. The Bankruptcy Code and Rules anticipate that single creditor petitions might be mistaken as to the total number of creditors, and provide a means to facilitate bankruptcy proceedings regardless of defects in the original petition. Section 303(c) was designed to furnish to creditors a summary method of making themselves parties petitioner, and thereby acquire standing in the proceeding equivalent to that of the original petitioner(s), which would prevent dismissal in case it developed that the petition was not filed by sufficient creditors with sufficient claims. However, a defective involuntary petition generally may not be cured through joinder of additional creditors where (1) the petition is clearly insufficient on its face, or (2) the petition was filed in bad faith, with a view of being later supported by the intervention of additional creditors.[29] When joinder is permitted, it

---

**28.** *Canute S.S. Co. v. Pittsburgh & West Virginia Coal Co., supra,* 263 U.S. at 248, 44 S.Ct. at 68.

**29.** *See Pianta v. Reich Co.,* 77 F.2d 888, 891 (2d Cir.1935); *In re Harris, supra,* 299 F. at 398; *In re Rush, supra,* 10 B.R. at 527–28 & n. 1; *Matter of Eastern Supply Company, supra,* 170 F.Supp. at 248; *Manning v. Evans, supra,* 156 F. at 109; *In re Stein, supra,* 130 F. 377, 378; *In re Bedingfield,* 96 F. 190, 192 (N.D.Ga.1899); *In re Midwest Processing Co., supra,* 41 B.R. 90, 103

will relate back to the date of filing the original petition, and the continuity of the bankruptcy case will not be interrupted.[30]

On the evidence before it, this Court is unable to find bad faith on the part of the initial petitioning creditor. Therefore, joinder was proper and the commencement date of this involuntary case is determined to be April 23, 1984.

The Court shall enter an appropriate order.

(Bkrtcy.D.N.D.1984). *See also* cases cited at notes 6 and 8, *supra.*

**30.** *See Moulton v. Coburn, supra,* 131 F. at 204.